**UNITED STATES of America,
Appellee,**

v.

**James Edward STRICKLER, Appellant.**

**No. 73–1656.**

United States Court of Appeals,
Ninth Circuit.

Jan. 11, 1974.

Richard H. Levin, Paul A. Turner (argued) Los Angeles, Cal., for appellant.

U. S. Atty. William D. Keller, Eric A. Nobles, Vincent M. Von Der Ahe, Asst. U. S. Attys. (argued) Los Angeles, Cal., for appellee.

Before HUFSTEDLER and GOODWIN, Circuit Judges, and THOMPSON,* District Judge.

OPINION

HUFSTEDLER, Circuit Judge:

Strickler appeals from his conviction for offenses relating to the distribution of cocaine. (21 U.S.C. §§ 841(a)(1), 846; 18 U.S.C. § 2.) We reverse for error in denying Strickler's motion to suppress a hand gun and an inculpatory statement. Evaluation of the two seizures, both of which occurred after

---

* District of Nevada, sitting by designation.

three police patrol cars had surrounded Strickler's parked automobile and one officer, with gun drawn, had approached Strickler and ordered him to raise his hands, requires discussion of two issues: (1) Did the police conduct in approaching Strickler's automobile constitute an arrest or was it merely an investigatory detention within the meaning of Terry v. Ohio (1968) 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, and Adams v. Williams (1972) 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612; (2) before the officers confronted Strickler, were the facts known to them sufficient to justify their detention of him?

In November 1972, undercover state police began negotiating with several of Strickler's codefendants to purchase cocaine. Delivery of the cocaine was eventually set for the morning of December 12, 1972, at the residence of codefendant McDaniel, on Cherrywood Street, south of the intersection of Cherrywood and Rodeo Road.

On December 12, the McDaniel residence was placed under surveillance. Officer Stevens, who was participating in the stakeout at a location approximately 150 yards from the Cherrywood-Rodeo Road intersection, testified that he saw a black-over-tan 1968 Cadillac traveling westbound on Rodeo Road at 2:45 p.m. The vehicle entered the Cherrywood-Rodeo Road intersection, slowed, and pulled over toward the north curb of Rodeo Road. Officer Stevens observed three people in the car, but he could not determine whether they were men or women. During the five or six seconds in which he could see the car, Stevens noticed that the occupants turned their heads in a southwesterly direction, that is, in the direction of the McDaniel residence. Stevens saw no one get into or out of the Cadillac.

Shortly after the car had disappeared from view, Officer Stevens saw a woman, later identified as appellant's wife, Velma Strickler, walking from the intersection area toward the McDaniel residence. Stevens had been informed by one of the police undercover agents that a woman was going to make the cocaine delivery to the McDaniel residence. As he was watching her, Officer Stevens saw a car that appeared to be the Cadillac he had seen moments earlier. The Cadillac drove eastward, in light traffic, through the intersection and continued on out of sight. Stevens then radioed his observations to other mobile units in the area.

Officer Ripley received the radio communication and proceeded toward the Cherrywood-Rodeo Road intersection until he saw a 1968 Cadillac, which fit the broadcast description, parking on Rodeo, east of Cherrywood. Two persons were in the vehicle, a man in the driver's seat (appellant Strickler) and a man in the rear seat (codefendant Parham); both men were looking in the direction of the McDaniel residence on Cherrywood.

Officer Ripley watched the two men in the car for approximately 30 minutes, at which time he received directions on his police radio from an unidentified source to "approach" the occupants of the Cadillac. Police cars then drove to the front and rear of the Cadillac. Officer Ripley drove a third squad car to the side of the Cadillac, and the officer riding with him pointed a gun at the occupants of Strickler's car and ordered them to raise their hands. Officer Ripley left the patrol car, went to the driver's side of the Cadillac, and inspected the interior of the vehicle. He saw a revolver near Strickler's foot. Ripley then ordered Strickler out of the car, handcuffed him, and formally advised him that he was under arrest for possession of the gun found in the automobile. Strickler and Parham were taken handcuffed to the McDaniel residence, where the other codefendants had just been placed under arrest. Strickler was there overheard saying to Parham, "Foolproof, huh!"

In Adams v. Williams (1972) 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612, the Supreme Court upheld the seizure of the occupant of a parked car based on less

than probable cause.[1] The Court thus made explicit what had been merely implied in Terry v. Ohio (1968) 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889—forcible street encounters may be initiated by the police if "reasonable" within the meaning of the Fourth Amendment.[2] The Supreme Court, however, also made it clear that the propriety of some forms of police conduct, even though they might be labeled "stops" or "investigatory detentions" by the police, would continue to be evaluated under a probable cause standard. (See 407 U.S. at 145–146, 92 S.Ct. 1921, 32 L.Ed.2d 612.)

■ To decide the case at bench, we need not prescribe precisely the point at which police action which detains a suspect ceases to be a nonarrest seizure and becomes an arrest; for we simply cannot equate an armed approach to a surrounded vehicle whose occupants have been commanded to raise their hands with the "brief stop of a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information" which was authorized in Williams. (407 U.S. at 146, 92 S.Ct. 1921, 32 L.Ed.2d 612.) The restriction of Strickler's "liberty of movement" was complete when he was encircled by police and confronted with official orders made at gunpoint. (See Henry v. United States (1959) 361 U.S. 98, 103, 80 S.Ct. 168, 4 L.Ed.2d 134; United States v. Selby (9th Cir. 1969) 407 F.2d 241, 242; Jackson v. United States (8th Cir. 1969) 408 F.2d 1165, 1168.) No significant, new restraint was added when Officer Ripley, a few moments later, handcuffed Strickler and formally pronounced him "under arrest." Thus, the arrest was completed before Officer Ripley reached the window of the Cadillac. (Cf. Rios v. United States (1960) 364 U.S. 253, 80

S.Ct. 1431, 4 L.Ed.2d 1688; Henry v. United States, supra; Plazola v. United States (9th Cir. 1961) 291 F.2d 56; Bailey v. United States (1967) 128 U.S. App.D.C. 354, 389 F.2d 305, 307–308.)

■ The constitutionality of the police conduct, therefore, depends upon whether, at the moment the police surrounded Strickler's automobile and leveled a gun at him, the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that Strickler had committed or was committing a criminal offense. (See Beck v. Ohio (1964) 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142; Henry v. United States, supra, 361 U.S. at 102, 80 S.Ct. 168, 4 L.Ed.2d 134.)

■ The Government failed to carry its burden of proving that probable cause to arrest existed. Before his arrest, the police had no information which implicated Strickler in any way in the cocaine negotiations. No one testified that Velma Strickler had been seen in the Cadillac, or that the Cadillac was connected with the cocaine. The arrest was based solely upon Strickler's proximity to a residence where cocaine was being delivered and his participation in some ambiguous driving and observing activity. Conduct less innocuous has been held insufficient to constitute probable cause. (E. g., Sibron v. New York (1968) 392 U.S. 40, 62–63, 88 S.Ct. 1889, 20 L.Ed.2d 917; United States v. Di Re (1948) 332 U.S. 581, 592, 68 S.Ct. 222, 92 L.Ed. 210.)

■ The revolver found in the Cadillac and the inculpatory statement made by Strickler, accordingly, were products of an illegal arrest; and both should have been suppressed. (Wong Sun v.

1. In Williams the initial "stop" approved by the Court was made by a single police officer who, without drawing his gun, approached an automobile which had been pointed out to him by an informer, tapped on the window, and asked the occupant, Robert Williams, to open the door. (407

U.S. at 144–145, 92 S.Ct. 1921, 32 L.Ed.2d 612.)

2. Compare Terry v. Ohio, supra at 19 n. 16, 98 S.Ct. 1868, 20 L.Ed.2d 889, with Adams v. Williams, supra at 145–146, 92 S.Ct. 1921, 32 L.Ed.2d 612.

United States (1963) 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.)

Because we have concluded that the officers' conduct before Officer Ripley reached the Cadillac was an arrest and not an investigatory detention, we have no occasion to decide whether the circumstances would have justified a mere investigatory stop. (*See generally* United States v. Mallides (9th Cir. 1973) 473 F.2d 859.)

Reversed.

BRUCE R. THOMPSON, District Judge:

I respectfully dissent. The Court's carefully reasoned decision is unassailable if the facts are correct. My problems are twofold. In the first place, this was a court trial. There was no pre-trial hearing on the motion to suppress. The admissibility of the evidence found inadmissible by this Court was determined on the basis of the evidence offered to prove guilt. In other words, the issue of probable cause to make an arrest was never tried. This Court has extrapolated from the transcript what it believes the officers knew about Appellant Strickler prior to the arrest. There was other evidence to prove his guilt. Such a determination cannot be properly made on this record.

Secondly, the lawfulness of the arrest of Strickler cannot be separated from a determination of the lawfulness of the arrest of Parham. The two were in the vehicle together. Parham was far more deeply involved in the transactions leading to the indictment. Here, again, it cannot be determined from the trial transcript just what the officers knew or had reasonable cause to believe about Parham's involvement as probable cause to support the arrest of Parham. If there was probable cause to arrest Parham, the mode of arrest, that is, surrounding the automobile and approaching with drawn firearms, was appropriate under all the circumstances disclosed by the evidence. The officers were not required to ignore Strickler, the other occupant of the vehicle, and give him a free hand to shoot them down. The pistol was in plain view between Strickler's feet and justified his arrest, assuming the arrest of Parham was supported by probable cause.

Accordingly, it is my conclusion that the appropriate disposition of this appeal is to remand the case to the District Court for a determination of the existence of probable cause to arrest Strickler and Parham, and if there was probable cause to arrest either, the conviction should be affirmed. *Cf.* United States v. Brown, 475 F.2d 91 (9th Cir. 1973).