**UNITED STATES of America,**
**Appellee,**

v.

**Jose Jesus RAMOS–ZARAGOSA,**
**Appellant.**

**No. 74–2932.**

United States Court of Appeals,
Ninth Circuit.

May 19, 1975.

---

**142**

Richard J. Trujillo, Phoenix, Ariz., for appellant.

Michael B. Scott, Asst. U. S. Atty., for appellee.

## OPINION

Before HUFSTEDLER and SNEED, Circuit Judges, and NIELSEN,* District Judge.

SNEED, Circuit Judge:

Appellant was charged with possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b). He was convicted in a trial without a jury and assigns as error the denial of his motion to suppress evidence. We reverse.

On April 9, 1974, an informer telephoned Special Agent George Cons and revealed that an old—perhaps 1965 or 1966—green Ford station wagon or pickup with a white, homemade wooden shell camper was transporting heroin. It appears that the informer also notified Cons that the vehicle had California license plates.

Cons relayed the information to two officers of the Yuma City-County Narcotics Task Force, who later that day spotted a moving pickup, within the limits of the above description, with two occupants. The officers, driving an unmarked car, turned on the siren and a red dashboard light and approached on the left side of this pickup. The officer in the passenger seat of the unmarked car displayed his badge and gun through the window and ordered the occupants to put up their hands. The two vehicles traveled side by side, a few feet apart, at a speed of approximately 30–35 mph, for about 250–350 yards. One of the officers testified that he observed the passenger of the pickup reach inside her

---

* The Honorable Leland C. Nielsen, United States District Judge, Southern District of California, sitting by designation.

jacket, lean forward, and reach downward. He testified that appellant, the driver, was also leaning forward, as though he were shielding the passenger from the officers' view. Thereafter, the appellant and his passenger sat upright and the truck stopped.

Both were directed to get out. One of the officers went to the passenger side of the pickup, opened the door, leaned down onto the floorboard, looked under the front seat, and discovered a sack of heroin. The officer testified that the sack could have been seen by one sitting in the vehicle and leaning over the seat. The sack was not visible from outside the vehicle.

No pretrial motion to suppress was made. At trial, prior to taking of testimony, the following exchange took place:

MR. LEBOWITZ [Assistant U. S. Attorney]: There have been two items marked.

Government's Exhibit 1, we will stipulate to this: It indicates the fact that the heroin in question was shipped to the chemist, that the analysis was made, and the result appears right on here. And I could read that into the record.

Here is the substance. That is Exhibit Number 2.

THE COURT: What is the stipulation?

MR. LEBOWITZ: Well, I think the stipulation would be that, first of all that Exhibit 2 is in fact the substance that was seized on April 9th, 1974, on or about. And that the particular substance in Exhibit 2 was sent to the Regional Laboratory in Dallas.

It was there analyzed, and it was determined that the exhibit contained 14.5 percent heroin, and that the weight of the substance was 192 grams. The gross weight was 193 grams. The net weight after the examination was 187 grams, and that it has not been tampered with since that time.

And actually we could just say that everything that appears in Exhibit Number 1 could take the place of the heroin itself, and if the Court would just as soon not take it into custody, we could then return it.

THE COURT: Well, since it is agreed that the substance in question is heroin, there is no reason that I see that the heroin needs to be part of the Clerk's file here.

MR. LEBOWITZ: Then with leave of Court, I would ask to withdraw it.

THE COURT: Can we agree to release that? Is it Exhibit 2?

MR. LEBOWITZ: Exhibit 2.

MR. TRUJILLO [Defendant's Counsel]: Yes. I have no objection to its being released.

THE COURT: All right. Is the stipulation agreed to?

MR. TRUJILLO: Yes, your Honor. The stipulation as stated by counsel, it is accurate.

THE COURT: Exhibit 1, the paper, may be admitted, and Exhibit 2 may be released by stipulation.

MR. LEBOWITZ: And that the substance that was seized was in fact heroin.

MR. TRUJILLO: Yes.

THE COURT: Yes. So we don't need to keep it. For purposes of custody, it can be returned to the agent. (R.T. 8–10.)

No motion to suppress the evidence was made at this time. Later, during the cross-examination of an agent, such a motion was made and, although the court expressed on several occasions the view that the above exchange together with the failure to move to suppress at the outset of the trial amounted to a waiver of appellant's rights to suppress the evidence the motion was taken under advisement.

At the conclusion of the trial, the court found the appellant guilty. In doing so the court reiterated its belief that the appellant's rights to suppress the evidence had been waived, but concluded

that even if this were not the case, there was "probable cause to stop the vehicle" (R.T. 151) and that the seizure of the heroin was not unlawful. It is our view that the trial court acted quite properly in hearing the appellant's motion to suppress. Its error was the denial of this motion.

■ Our review of the entire record of this case convinces us that it would be unjust to treat the circumstances set out above as a waiver. Even if it be assumed that counsel for the appellant and the Government were engaged in palpable tactical maneuvers, it does not follow that in a non-jury trial such maneuvers should deprive the accused of a meaningful hearing on his right to suppress evidence. Such a hearing was afforded here.

■ The fact that the motion to suppress was untimely, of course, does not preclude our review of the trial court's ruling with respect to such an untimely motion. United States v. Wylie, 149 U.S. App.D.C. 283, 462 F.2d 1178 (1972); United States v. Seay, 432 F2d 395 (5th Cir. 1970); United States v. DiRe, 159 F.2d 818 (2nd Cir. 1947), aff'd, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1947). Cf. Taglavore v. United States, 291 F.2d 262 (9th Cir. 1961) (appellate court reviewed trial judge's ruling on objection to evidence, made at trial, although no pretrial motion to suppress had been made); Stein v. United States, 166 F.2d 851 (9th Cir. 1948), cert. denied, 334 U.S. 844, 68 S.Ct. 1512, 92 L.Ed. 1768.

■ Although we hold that the heroin should have been suppressed, we recognize that the facts of this case present a very close question. The line between evidence seized pursuant to an unlawful arrest which must be suppressed (Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); United States v. Strickler, 490 F.2d 378 (9th Cir. 1974); Plazola v. United States, 291 F.2d 56 (9th Cir. 1961)) and evidence seized on the basis of probable cause which developed concurrently with a reasonably brief investigatory stop pursuant to the

authority of Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) and Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) is a difficult one to draw and follow. Compare United States v. Bugarin-Casas, 484 F.2d 853 (9th Cir. 1974) with United States v. Strickler, supra. In any event, an extensive review of the authorities will serve no purpose here. Our position can be stated simply. In this case there was an arrest which was not based on probable cause. The arrest was completed when the appellant and his passenger complied with the order to get out of the pickup. The encounter of the agents and the appellant and his passenger was an arrest, as opposed to an investigatory stop, because the agents at gun point, under circumstances not suggesting fears for their personal safety, ordered the appellant and his passenger to stop and put up their hands.

The Government relies on Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). In that case the Supreme Court held that under the facts before it, the narcotics agent had probable cause to arrest the accused. This case is distinguishable. Here the reliability of the informer had not previously been demonstrated, and the description of the vehicle being used by the appellant was considerably less precise than was the description of the accused in Draper.

■ The Government attempts to bolster its case for the existence of probable cause to arrest prior to the completion of the arrest by pointing to the movements of the appellant and his passenger immediately prior to the stopping of the pickup. The issue is a close one; but it is our view that these movements, together with all other circumstances, were not sufficient to amount to probable cause for arrest. Suspicion sufficient to justify an investigatory stop cannot be employed to support an arrest. Nor can an arrest, unsupported by probable cause, be saved by redesignating it an investigatory stop.

We realize this state of affairs is not an entirely happy one for law enforcement officials. It is not surprising that such poorly marked boundaries are sometimes transgressed. Our task, however, is to preserve the markings as best we can. We cannot do this by pretending they do not exist.

Reversed.

NIELSEN, District Judge (dissenting):

I am not convinced that the government had full opportunity to support the reliability of the informant and therefore dissent.