UNITED STATES of America,
Plaintiff-Appellee,

v.

Raymond Brian RUSSELL,
Defendant-Appellant.

No. 76–2500.

United States Court of Appeals,
Ninth Circuit.

Dec. 15, 1976.

Rehearing Denied Jan. 25, 1977.

Bob Barber, Jr. (argued), Tucson, Ariz., for defendant-appellant.

Daniel G. Knauss, Asst. U. S. Atty. (argued), Tucson, Ariz., for plaintiff-appellee.

Before WRIGHT and TRASK, Circuit Judges, and PALMIERI,* District Judge.

* Honorable Edmund L. Palmieri, Senior United States District Judge, Southern District of New York, sitting by designation.

## 840

TRASK, Circuit Judge:

Following the denial of a motion to suppress evidence, the appellant, Raymond Brian Russell, waived jury trial and submitted his case to the court based upon the testimony and evidence presented at the motion to suppress. He was found guilty of knowingly and intentionally possessing approximately 1,100 pounds of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). This appeal followed.

On March 9, 1976, at approximately 10:30 p. m., two Customs Patrol Officers were on patrol duties in the vicinity of Bisbee Junction in southern Arizona, about 1½ miles north of the Mexican border. They observed a vehicle turn onto Warren Ranch Road. This was a dirt road leading to nothing except a ranch house. After it drove about 100 yards down the road, the lights on the vehicle were turned out. The officers drove past the intersection and then turned off their own lights and returned to a point where they could observe the vehicle through night scopes. They observed a pickup with a camper shell and the rear door open. A few minutes later, they heard loud banging noises about the rear of the vehicle and saw four people moving around the rear of the camper.

Soon the door slammed and the vehicle started, turning on its lights as it approached the intersection. The area around the Warren Ranch Road was well known to the officers to be a pickup point for aliens and marijuana. The officers followed the vehicle for approximately one mile and then stopped it. They were then about three miles from the international border. They pulled up to about 25 feet from the pickup, stepped out of their car, and asked Russell to step out of the pickup while they stood behind the doors of the patrol car. They then identified themselves as United States Customs officers and instructed Russell to put his hands above the camper. One of the agents had a shotgun cradled in his arm but not pointed at the appellant. The other agent held his shotgun behind the rear door concealed from appellant's view.

One of the officers asked Russell if he had a key to the back of the camper and was told that he did not. Russell was then asked what was in the back of the camper and he told the officer he did not know. Russell also told him he did not know whose vehicle it was. The officer then went to the back of the camper, where he detected the odor of the marijuana. He opened the back door with a screwdriver and saw the marijuana within.

All counsel agree that the investigatory stop was based upon well founded suspicion. *See United States v. Brigoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *United States v. Rocha-Lopez*, 527 F.2d 476 (9th Cir. 1975), *cert. denied*, 425 U.S. 977, 96 S.Ct. 2181, 48 L.Ed.2d 802; *Wilson v. Porter*, 361 F.2d 412 (9th Cir. 1966). Appellant urges that the continued detention, the opening of the door of the camper, and the drawing of weapons by the officers were not justified as being based upon probable cause. We disagree. The obviously false answers Russell gave, the suspicion those answers cast upon the observed movements of the vehicle at such a late hour, the location of the pickup, and the characteristic odor of marijuana all combined to create probable cause to search the vehicle. The officers would have been foolhardy not to have weapons ready at this hour and location, particularly when they had observed four persons around the camper a few minutes before and only one was observed when it was stopped. Conditions were perfect for an ambush. *See United States v. Nunez-Villalobos*, 500 F.2d 1023 (9th Cir.), *cert. denied*, 419 U.S. 1090, 95 S.Ct. 682, 42 L.Ed.2d 683 (1974); *United States v. Jaime-Barrios*, 494 F.2d 455 (9th Cir.), *cert. denied*, 417 U.S. 972, 94 S.Ct. 3178, 41 L.Ed.2d 1143 (1974).

The judgment is Affirmed.

EUGENE A. WRIGHT, Circuit Judge, specially concurring:

I concur in the result of the majority opinion but feel that further clarification of the issue and a comment on appellant's arguments is necessary.

Appellant's main contention was that the drawing of weapons by the officers and the continued detention of appellant with his hands against the camper amounted to an *arrest* without probable cause, rather than an investigatory stop based on founded suspicion.

In support of his argument, appellant cites *United States v. Ramos-Zaragosa*, 516 F.2d 141 (9th Cir. 1975), *United States v. Strickler*, 490 F.2d 378 (9th Cir. 1974); and *Taylor v. Arizona*, 471 F.2d 848 (9th Cir. 1972), *cert. denied* 409 U.S. 1130, 93 S.Ct. 948, 35 L.Ed.2d 262 (1973). These cases, however, as well as others cited by appellant, are factually distinguishable from the situation here.

The initial consideration must be whether appellant was stopped and detained in a necessary and reasonable manner. If so, then the degree of force shown on the part of the officers did not transform the stop into an arrest. *Compare United States v. Richards*, 500 F.2d 1025 (9th Cir. 1974), *cert. denied* 420 U.S. 924, 95 S.Ct. 1118, 43 L.Ed.2d 393 (1975). This type of initial inquiry was suggested in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), where the Court noted that it could not blind itself to "the need for law enforcement officers to protect themselves . . . in situations where they may lack probable cause for an arrest." *Id.* at 24, 88 S.Ct. at 1881.

For example, in *Ramos-Zaragosa, supra*, an arrest was found where agents ordered an accused to stop and put up his hands "under circumstances not suggesting fears for their personal safety." *Id.* at 144. This was not the situation in this case. Here the back windows of the camper were curtained and covered with reflecto screens. The officers were justified in having weapons ready, particularly when they had observed four persons around the camper a few minutes before and only one was observed when it was stopped. The hour was late and it was dark. As has already been observed, conditions were perfect for an ambush.

Once the stop had been properly made, there was probable cause to search. I note that appellant does not contend otherwise.

For the reasons given above, the officers' actions did not amount to an arrest without probable cause and the seizure of the marijuana was not the fruit of an illegal arrest.