**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Frank J. MAYBUSHER,
Defendant-Appellant.**

**No. 83–5040.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 7, 1983.

Decided June 15, 1984.

Daniel J. Broderick, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Thomas J. Lannen, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

Before ALARCON and NORRIS, Circuit Judges, and EAST,* District Judge.

EAST, District Judge:

Frank J. Maybusher appeals from the District Court judgment of conviction entered on January 17, 1976, for possession with intent to distribute approximately 11,-000 pounds of marijuana, a schedule one controlled substance, in violation of 21 U.S.C. § 841(a)(1). We note jurisdiction under 28 U.S.C. § 1291, and affirm.

BACKGROUND

Because of various incidents occurring in and around the Oxnard, California, marina areas during the early part of January, 1976, customs officials became aware of marijuana smuggling operations in that location. Based on specific information provided by a Newport yacht salesman con-

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

cerning the recent purchase of two Skipjack boats, the police began surveillance of a particular Oxnard residence. The officers' continued observation of the Oxnard residence revealed frequent departures of the Skipjack boats and other vehicles from the house to the nearby marina. These observations led to the arrest of several persons for possession and smuggling of marijuana. During the related seizure of several hundred pounds of marijuana from a craft the arrestees had towed to a warehouse in Ventura, a customs officer noticed a red paint transfer running along the side on one of the Skipjacks. To the officer, the red paint transfer mark indicated that the Skipjack had rubbed against a red vessel.

One of the arrestees, Steven Smith, was later interviewed by Drug Enforcement Agency (DEA) agents and Ventura County Sheriffs. Smith voluntarily confessed his involvement in the smuggling operation and told the officers that five tons of marijuana could be found in a fishing trawler named the Red Baron at the Coast Guard dock. Included in Smith's description of the Red Baron was the fact that the outside of its hull was painted red. Subsequent investigation that day revealed that a vessel fitting Smith's description of the Red Baron had left the Port Hueneme area some thirty minutes earlier and had headed for open water in a northwesterly direction. The officers then boarded a California Fish and Game Department vessel, and went to locate the Red Baron approximately five miles out to sea.

Maybusher was in the wheelhouse steering the Red Baron when a sheriff's helicopter was first to approach the vessel. By use of a bullhorn from the helicopter, the Red Baron was ordered to halt its present course, and for all the occupants to make themselves visible on the rear deck. Maybusher brought the vessel to a slow. The Fish and Game Department vessel "Yellowtail" came alongside the Red Baron. Officers on the Yellowtail had seen the name "Red Baron" on the stern of the boat as they approached. An officer ordered the visible occupants of the vessel to lay down on the after deck, and the Red Baron was

boarded. The officers were visibly armed, as was an officer in the helicopter. One officer then asked if there were any other persons on board. Maybusher indicated there were not, and then spontaneously stated that "there is not going to be any trouble, all we got is weed aboard." Thereafter, a large quantity of marijuana and three guns were located and seized aboard the Red Baron. At that time Maybusher was placed under arrest. No search warrant or arrest warrant was obtained prior to the stop of the Red Baron.

Maybusher was indicted on February 6, 1976, and arraigned in the District Court on March 1. One week before trial, Maybusher and his eleven co-defendants filed a motion to suppress the marijuana seized. This motion was granted and the indictment was dismissed. The Government's motion for reconsideration of the order granting the defendants' motion to suppress and dismissing the indictment was denied by the court on the ground that it lacked jurisdiction to reconsider its order. In *United States v. Emens*, 565 F.2d 1142 (9th Cir.1977) (*Emens I*), this court disagreed and remanded the cause to the District Court for further consideration. The District Court subsequently vacated its dismissal and suppression order. The indictment was reinstated. Three of Maybusher's co-defendants were rearrested, tried and convicted after a new motion to suppress the seized marijuana was denied. The co-defendants appealed their convictions on the ground that the District Court erroneously denied their motion to suppress. This court held in part that the search of the Red Baron was illegal and therefore the motion to suppress should have been granted. *United States v. Emens*, 649 F.2d 653, 657–58 (9th Cir.1980) (*Emens II*). Maybusher had moved to the state of Washington during pendency of the appeal (*Emens I*), and was not rearrested and made to stand trial on the original charges along with his co-defendants.

In late November, 1982, Maybusher was rearrested in Washington, and was arraigned on the reinstated indictment on De-

cember 8 in the Central District of California. Since the judge to whom the case had been assigned was unavailable, the arraignment and appointment of a Federal Public Defender on December 8 occurred before a substituting judge. The matter was continued until December 13, 1982, at which time the assigned judge set a trial date appearance with counsel. Maybusher requested at this time that the trial be set at least thirty days from his first appearance with counsel. The request was denied. Prior to trial, Maybusher's motion to suppress was denied. On January 4, 1983, the matter proceeded to trial before the court on stipulated facts, and Maybusher was convicted of possession with intent to distribute a schedule one controlled substance. 21 U.S.C. § 841(a)(1). This appeal followed.

DISCUSSION

The basis on which appellant seeks reversal of his conviction is threefold. First, Maybusher contends denial of his motion for a continuance resulted in a violation of the Speedy Trial Act, 18 U.S.C. § 3161 et seq., and his Sixth Amendment right to the assistance of counsel. Second, Maybusher argues that *Emens II* is the law of the case and requires that the seized marijuana from the Red Baron be suppressed. Third, and lastly, Maybusher contends that even if *Emens II* is not law of the case, the search and seizure of the Red Baron fails to pass muster under the Fourth Amendment. We find all three contentions unmeritorious.

I. *Speedy Trial*

Maybusher first contends that in denying his motion for a continuance, the District Court violated the Speedy Trial Act (Act). 18 U.S.C. § 3161 et seq. Specifically, the appellant argues that the Act required a thirty-day minimum period between his first appearance on the reinstated indictment and his trial. We disagree.

■ The circumstances of the appellant's reindictment and trial fall within subsection (d)(2) of Section 3161 (Supp.1983). This subsection applies when the defendant is to be tried upon an indictment dismissed by a

trial court and reinstated following an appeal. Unlike other subsections of the statute which deal with different procedural situations involving a defendant's indictment and trial, subsection (d)(2) does not specifically require that the trial be delayed a minimum of thirty days from the time of the defendant's first appearance with counsel, or from his waiver of counsel and election to proceed pro se. *See* Section 3161(c)(2) (Supp.1983) (thirty-day delay in commencement of trial required after defendant's initial appearance with counsel when defendant is tried on indictment that has not been dismissed); Section 3161(d)(1) (defendant entitled to thirty-day delay after refiling of an indictment that is identical to one dismissed on motion of defendant). Since Congress, in enacting the Speedy Trial Act, chose not to afford a defendant a thirty-day delay in the commencement of trial when he is reindicted after the indictment was dismissed and reinstated following an appeal, we cannot do so here. We conclude that Maybusher was not entitled to a thirty-day delay in the commencement of his trial. Therefore, the District Court did not violate the Speedy Trial Act by scheduling his trial for twenty-seven days after his appearance with counsel on the reinstated indictment.

■ Maybusher also contends that the District Court's denial of his motion for a continuance violated his Sixth Amendment right to the assistance of counsel. The granting of a continuance is within the discretion of the District Court and an order denying a continuance will not be reversed unless there is a clear abuse of discretion. *United States v. Nolan,* 700 F.2d 479, 482 (9th Cir.1983), *cert. denied,* —— U.S. ——, 103 S.Ct. 3095, 77 L.Ed.2d 1354 (1983). Furthermore, actual prejudice must be shown before the denial of a continuance will be reversed. *United States v. Hernandez,* 608 F.2d 741, 746 (9th Cir. 1979).

■ Maybusher has failed to show that he suffered any specific prejudice in having twenty-seven rather than thirty days to

prepare for trial. He refers neither to an inability to collect evidence nor to difficulty in locating witnesses. We are satisfied that the District Court's denial of appellant's motion for a continuance was neither an abuse of discretion nor a violation of the Sixth Amendment.

## II. Law of the Case

Maybusher asserts that *Emens II* is law of this case and requires that the marijuana seized on the Red Baron be suppressed. Again, we cannot agree.

■ The doctrine of law of the case concerns the continued application of a rule of law previously determined in that same case. *Messinger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912); *In re Staff Mortgage & Investment Corp.*, 625 F.2d 281, 283 (9th Cir.1980). 1B J. Moore, Moore's Federal Practice ¶ 0.404, pp. 117–24 (2d ed. 1982). In short, "[t]he 'law of the case' rule ordinarily precludes a court from re-examining an issue previously decided by the same court, or a higher appellate court, in the same case." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 833 (9th Cir.1982). The doctrine expresses only the practice of courts generally to refuse to reopen questions formerly decided, and is not a limitation of their power. *Messinger v. Anderson;* and *United States v. Fullard-Leo*, 156 F.2d 756, 757 (9th Cir. 1946) (en banc), *aff'd*, 331 U.S. 256, 67 S.Ct. 1287, 91 L.Ed. 1474 (1947).

■ The doctrine typically applies to the same case when the parties in the subsequent proceeding were also the parties to the former appellate decision. This matter is not entirely the same case as that before the court in *Emens II*. Maybusher was not a party to the final proceedings in *Emens II*, and his ultimate conviction did not occur as a result of the same trial as his co-defendants. The doctrine does not apply in this matter. *See, e.g., United States v. Rosales*, 606 F.2d 888 (9th Cir.1979) (sufficiency of evidence issue in a criminal conviction was decided in prior appeal against the same defendant—court declined to reconsider the question on second appeal be-cause the initial holding was law of the case); *United States v. Tierney*, 448 F.2d 37 (9th Cir.1971) (law of the case established on appeal by one co-defendant applied to suppression issue later raised on different appeal by two other co-defendants convicted in the same trial as the first appealing co-defendant).

■ The policy of finality underlying the doctrine is not offended by our permitting the Government to argue the legality of the Red Baron search here. As it pertains to defendant Maybusher, the search was based on the facts as further developed and litigated in his separate motion to suppress. Moreover, law of the case is an equitable doctrine that should not be applied if it would be unfair to the Government to bar it from relitigating the disputed issue. The focus in *Emens II* was on the many searches conducted and their legality in relation to only the three co-defendants. The co-defendants may not have had standing or may not have felt compelled to mount the kind of aggressive challenge to the search of the Red Baron that would have given the Government the incentive to litigate the question fully in that case. Thus, it would be unfair to hold the Government in this matter to the determination of the issue regarding the search of the Red Baron in *Emens II*. For the same reasons, the equitable doctrine of collateral estoppel would not apply. *United States v. Mendoza*, —— U.S. ——, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984) (nonmutual offensive collateral estoppel does not apply against the Government).

The doctrine of law of the case does not apply in this matter and could not properly be invoked to eliminate review by this panel of the court.

## III. Stop and Search of the Red Baron

### A. The Stop

The Government does not contend that probable cause existed to arrest Maybusher upon boarding the Red Baron, but argues that an investigative stop by the offi-

cers was justified under the circumstances. We agree.

To justify the stop of the Red Baron under the Fourth Amendment, the officers must have had a founded suspicion of criminal conduct. *United States v. Allen,* 675 F.2d 1373, 1383 (9th Cir.1980); and *United States v. Piner,* 608 F.2d 358, 361 (9th Cir.1979). *Cf. Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). We have stated that "[f]ounded suspicion exists when an officer is aware of specific articulable facts, together with the rational inferences drawn therefrom that reasonably warrant suspicion that the person to be detained may have committed or is about to commit a crime." *United States v. Burnette,* 698 F.2d 1038, 1047 (9th Cir.1983),

*cert. denied,* —— U.S. ——, 103 S.Ct. 2106, 77 L.Ed.2d 312 (1983).

The officers knew that a large scale marijuana smuggling operation conducted by use of smaller boats ferrying contraband to land from a larger ship was occurring in the Oxnard area. One of those small Skipjack boats containing marijuana that was seized in an earlier investigation had a red paint transfer on its side. The Red Baron matched the description of a red marijuana supply ship given by Smith, one of the previously arrested smugglers.

The District Court's finding that "founded suspicion" based on specific and articulable facts justified this stop is subject to de novo review.[1] We hold that the information known to the boarding offi-

---

1. Under existing Ninth Circuit precedent, a District Judge's determination that a search was or was not based upon founded suspicion is subject to deferential, clearly erroneous review. *United States v. Huberts,* 637 F.2d 630, 635 (9th Cir. 1980), *cert. denied,* 451 U.S. 975, 101 S.Ct. 2058, 68 L.Ed.2d 356 (1981). In view of our recent en banc decision in *United States v. McConney,* 728 F.2d 1195, 1202 (9th Cir.1984), however, we believe that the application of this standard of review is no longer appropriate. In *McConney,* where we held that the mixed question of exigent circumstances is reviewed de novo, we stated that the key to selecting the proper standard of review for a mixed question, such as the question of founded suspicion, is "the nature of the inquiry that is required to decide 'whether the rule of law as applied to the established facts is or is not violated.'" *Id.* at 1202 (quoting *Pullman-Standard v. Swint,* 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 1790 n. 19, 72 L.Ed.2d 66 (1982)). Where this inquiry requires us to consider legal concepts and to exercise judgment about the values that animate legal principles, de novo review is appropriate. *Id.* The mixed question of founded suspicion necessitates such an inquiry because it requires the court to determine whether the detaining officer was "'aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion' that the law is being broken." *United States v. Collom,* 614 F.2d 624, 628 (9th Cir.1979), *cert. denied,* 446 U.S. 923, 100 S.Ct. 1862, 64 L.Ed.2d 278 (1980) (quoting *United States v. Brignoni-Ponce,* 422 U.S. 873, 884, 95 S.Ct. 2574, 2581, 45 L.Ed.2d 607 (1975)) (footnote omitted). For standard of review purposes, the determination whether the facts known to the detaining officer "reasonably warrant[ed] suspicion" is indistinguishable from the determination required by the mixed question of exigent circumstances—whether circumstanc-

es existed that would cause a reasonable person to believe that entry was necessary to prevent physical harm to the officers or some other consequence improperly frustrating law enforcement efforts. Both determinations are rooted in constitutional policies and principles. The resolution of each requires that the court strike a balance between the privacy interest underlying the Fourth Amendment and the Government's interest in effective crime prevention and detection. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Thus, applying the analysis adopted by this circuit in *McConney,* we hold that like the mixed question of exigent circumstances, the mixed question of founded suspicion is properly subject to de novo review.

Our decision to apply the standard dictated by *McConney,* rather than *Huberts,* follows from the rule that a panel can reexamine the earlier decision of a three-judge panel if that earlier decision has been undermined by later overriding precedent. It is already well established that "[w]here ... a Supreme Court decision has effectively undermined prior Ninth Circuit precedent, we are free to reexamine those earlier cases to determine their continuing validity." *Heath v. Cleary,* 708 F.2d 1376, 1378 n. 2 (9th Cir.1983) (citing *Le Vick v. Skaggs Cos., Inc.,* 701 F.2d 777, 778 (9th Cir.1983)). *See also Duncan v. United States,* 713 F.2d 538, 541 n. 1 (9th Cir.1983); *Piedmont Label Co. v. Sun Garden Packing Co.,* 598 F.2d 491, 492 (9th Cir.1979). We see no reason to differentiate between intervening en banc decisions of the Ninth Circuit and decisions of the Supreme Court for this purpose. Both the Supreme Court and en banc panels have authority to overrule earlier precedent, and the decisions of both are binding on three-judge panels.

cers, including the smuggling tip and the officers' own observations of the vessel, warranted the detention of the Red Baron for an investigatory inquiry.

 Maybusher asserts that even if the boarding stop was initially justified, it was quickly transformed into an arrest unsupported by probable cause because the officers boarded the Red Baron and utilized excessive force in doing so.

With regard to the officers coming alongside the Red Baron and immediately stepping onto the deck, "[w]e are persuaded that a boarding is a necessary element of many vessel investigatory stops, given the sound and motion of water, the often significant size differential between the government's boat and the investigated vessel, and the extreme mobility of water craft." *Blair v. United States*, 665 F.2d 500, 505–06 (4th Cir.1981).

 Additionally, restrictions on a person's freedom of movement may be imposed to maintain the status quo while making an initial inquiry provided the force displayed is not excessive under the circumstances. *Terry v. Ohio;* and *United States v. Patterson*, 648 F.2d 625, 633 (9th Cir.1981). We think the law enforcement personnel took reasonable precaution in boarding the Red Baron with weapons visible because it was a large vessel, was isolated on the high seas, was thought to be involved in large scale marijuana smuggling, and contained an unknown number of crew, possibly armed. A "search for narcotics is the kind of transaction that may give rise to sudden violence ...." *Michigan v. Summers*, 452 U.S. 692, 702, 101 S.Ct. 2587, 2594, 69 L.Ed.2d 340 (1981). The use of armed precaution was reasonable under these particular circumstances and was not excessive. *United States v. Bautista*, 684 F.2d 1286 (9th Cir.1982), *cert. denied*, 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 447 (1983); *United States v. Patterson; United States v. Russell*, 546 F.2d 839 (9th Cir.1976); *United States v. Worthington*, 544 F.2d 1275, 1280 n. 3 (5th Cir.), *cert. denied*, 434 U.S. 817, 98 S.Ct. 55,

54 L.Ed.2d 72 (1977). The stop was not an arrest.

**B. *The Search***

 We believe Maybusher's spontaneous statement made to the boarding officers during the initial phase of the stop that "all we got is weed aboard" gave the officers probable cause to believe the vessel contained contraband. *See United States v. One Twin Engine Beech Airplane*, 533 F.2d 1106, 1108 (9th Cir.1976). Nevertheless, the ensuing search of the hold can only be upheld if it falls within one of the exceptions to the warrant clause. Government "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (footnotes omitted). "One such exception is the finding of probable cause coupled with exigent circumstances." *United States v. Stanley*, 545 F.2d 661, 664 (9th Cir.1976), *cert. denied*, 436 U.S. 917, 98 S.Ct. 2261, 56 L.Ed.2d 757 (1978).

The inherent mobility of the Red Baron and the hazard that the contraband could be destroyed by being thrown over the side combine to create the exigent circumstances required by *Stanley*. Perhaps even more so than an automobile, seagoing vessels upon the open waters can pursue "random courses and devious actions." *United States v. Weinrich*, 586 F.2d 481, 492 (5th Cir.1978), *cert. denied*, 441 U.S. 927, 99 S.Ct. 2041, 60 L.Ed.2d 402 (1979). This inherent mobility of vehicles, whether on land or water, has long been recognized as an underlying rationale for warrantless searches. As the Supreme Court has noted:

> [T]he guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the government, as recognizing a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant

readily may be obtained and a search of a ship, motor boat, wagon, or automobile for contraband goods, where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.

*Carroll v. United States*, 267 U.S. 132, 153, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925).

Because Government officials had probable cause to believe that the vessel was carrying contraband, and because exigent circumstances made the obtaining of a judicial warrant impracticable, the warrantless search and seizure of marijuana aboard the Red Baron was proper.

 Upon the officers' viewing of the marijuana in the hold of the Red Baron, there was probable cause to arrest Maybusher, the owner and captain, on the deck of the vessel. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). Because the officers had probable cause to make the arrest, it is not necessary to prove exigent circumstances to justify a warrantless arrest. *United States v. Watson*, 423 U.S. 411, 423, 96 S.Ct. 820, 827, 46 L.Ed.2d 598 (1976).

Maybusher's conviction is affirmed.

AFFIRMED.