PATTERSON, Judge.
Appellant, Allen Ray Jordan, was indicted by the Baldwin County Grand Jury for possession of marijuana, in violation of § 20-2-70, Code of Alabama 1975. He was convicted, after a jury trial, of the lesser included offense of possession of marijuana for personal use, and was sentenced to one year of confinement in the county jail, fined $500, and ordered to pay the court costs. The sentence was split, and appellant was ordered to serve 90 days in the county jail, and the balance of the year on supervised probation. He appeals, raising one issue.
Appellant contends that the police officers did not have probable cause to arrest him or to search his automobile and, therefore, that seizure of the marijuana discovered in his automobile constituted a violation of his rights under the Fourth and Fourteenth Amendments, requiring suppression of the items seized.
On the other hand, the state contends that appellant was properly stopped and detained on the authority of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and that, subsequently, probable cause to search the automobile and seize the marijuana was established on the basis of evidence observed in plain view.
On December 3, 1986, Officer Rodney Steed of the Mobile Police Department was working with the department’s Crime Stoppers Program, a program which encourages members of the public to report criminal activity to the police, while remaining anonymous. (In fact, Steed testified that the police do not want to know the names of the informers who call in on the program, and deliberately avoid asking them to identify themselves.) On that day, he received an anonymous telephone call from a person informing him that “a[n] early ’70 model GMC Jimmy bearing California license plates was heading eastbound from the Mobile area to Florida”; that it was occupied by a white male named Allen Jordan and a white female named Karen Jordan; that they possessed approximately a pound of marijuana and a powder substance known as “methamphetamine or speed”; that they had in their possession several pistols and “some long guns, rifles, and shotguns”; and that one of the persons was “carrying a gun on or about his person where he could reach it.” Immediately after receiving the call, Officer Steed telephoned Captain James W. Stallings of the state police and relayed the information to him. Stallings then immediately relayed the information by radio to State Trooper William H. Paustian, who was patrolling in a marked patrol car east of Mobile. Shortly thereafter, Paustian spotted an automobile fitting the description and occupied by two persons traveling east toward Florida on Interstate Highway 10. He reported this information by radio to Captain Stall-ings, who immediately arranged for other officers, as well as a “narcotics agent,” to converge on the area to “back up” Paus-tian. Arrangements were made by radio to set up a roadblock, and to stop the automobile at the Loxley exit of Highway 10.
*163 Appellant, along with his wife, was traveling from California to Florida to visit his family over the Christmas holidays. They had stopped for a visit with an aunt in Mobile, and were continuing on their way to Florida. When appellant approached the Loxley exit about 1:30 p.m., there was a police car on each side of him and one behind him. Upon reaching the exit, the blue lights and sirens were turned on in all three police cars. Appellant immediately pulled to the side of the road and stopped his vehicle. He observed other automobiles parked at the intersection and, when his vehicle came to a stop, it was immediately surrounded by several uniformed and plainclothes police officers who had their weapons drawn. One of the officers was armed with a shotgun, and the others were armed with pistols. Appellant was ordered to get out of his automobile, was patted down for weapons, and was moved, along with his wife, to the rear of the vehicle, where he and his wife were required to sit on the grass some distance from the vehicle. An armed officer guarded appellant and his wife while other officers proceeded to look into his vehicle.
Trooper Paustian testified that, after appellant and his wife had been removed to the rear of the vehicle, he looked into appellant’s vehicle and observed, in plain view, a partially smoked marijuana cigarette, which he seized. Then he instructed one of the officers to place appellant and his wife under arrest for possession of marijuana. They were instructed that they were under arrest, and were read their rights in accordance with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Paustian then proceeded to search the automobile, finding a bag of marijuana in some clothing and a white powder substance in the pocket of a jacket. He also found, under the driver’s seat, a .45 caliber pistol and, in appellant’s wife’s purse, a small derringer pistol. Appellant and his wife were transported to jail, and their automobile was impounded and removed to the police station. A thorough search was made of the automobile at the station, which revealed several additional bags of marijuana, several “roaches,” and other items showing traces of marijuana. According to Officer William H. Wommack, appellant admitted that the marijuana belonged to him.
Appellant contends that the trial court committed reversible error when it denied his motion to suppress the evidence seized. The state’s sole argument on appeal is that appellant was not initially arrested, but rather was lawfully stopped for investigative purposes, and that events during the investigative stop provided the officers with probable cause to arrest him. When the motion to suppress was being considered by the trial court, the prosecutor contended, inter alia, that the officers had probable cause to arrest appellant before stopping his automobile; however, this contention is not urged by the state on appeal.
Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny created a narrowly drawn exception to the broad general rule that the seizure of a person “must be supported by the ‘long prevailing standards’ of probable cause.” Dunaway v. New York, 442 U.S. 200, 212, 99 S.Ct. 2248, 2256, 60 L.Ed.2d 824 (1979). Thus, a police officer may, under certain circumstances and in an appropriate manner, approach a person for the purpose of investigating criminal activity or behavior even though there is no probable cause to make an arrest. Terry v. Ohio. “[T]he quantum of cause necessary to justify an investigatory stop is a ‘reasonable’ or ‘founded’ suspicion that a person has committed or is about to commit a criminal act.... The founded suspicion must arise from specific facts and not inchoate hunches, but the officer is entitled to draw inferences from the facts in light of his experience.” United States v. Post, 607 F.2d 847, 850 (9th Cir.1979). See also Caffie v. State, 516 So.2d 822 (Ala.Cr.App.1986), aff’d, 516 So.2d 831 (Ala.1987); 1 W. LaFave and J. Israel, Criminal Procedure § 3.8(d) (1984). Even though law enforcement officers with sufficient justification may briefly stop a person without arresting .him, the investigative detention must be temporary and last no longer than is necessary, and the investigative methods em *164 ployed should be the least intrusive means reasonably available. Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). What starts out as an investigatory stop under Terry might escalate into an arrest when the police conduct is so intrusive that it exceeds the bounds of reasonableness. Florida v. Royer; Dunaway v. New York; United States v. Martinez, 808 F.2d 1050 (5th Cir.1987); Caffie v. State. “If the seizure involves anything more than the brief and narrowly defined intrusion authorized by Terry, it must be justified by probable cause.” Kraus v. County of Pierce, 793 F.2d 1105 (9th Cir.1986), cert. denied, 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 763 (1987).
Applying the above principles of law to the case sub judice, we conclude that a seizure more, intrusive than an investigatory stop occurred. Appellant’s encounter with the officers went far beyond the scope of Terry. We find that the seizure of appellant was indistinguishable from a traditional arrest, and hold that it could be justified only upon a showing of probable cause. We question here whether the officers even intended a Terry stop. It can be reasonably concluded from the record that an arrest was intended from the very beginning. Terry simply cannot be used to justify what occurred here. There are numerous cases where officers’ approaches to automobiles have been held to be so intrusive as to constitute arrests, for which probable cause is required. See, e.g., United States v. Vasquez, 638 F.2d 507 (2d Cir.1980) (and cases cited therein); United States v. Ramos-Zaragosa, 516 F.2d 141 (9th Cir.1975) (order to stop car, made at gunpoint while ear in motion, held an arrest); United States v. Strickler, 490 F.2d 378 (9th Cir.1974) (car surrounded by officers issuing orders at gunpoint); United States ex rel. Walls v. Mancusi, 406 F.2d 505 (2d Cir.), cert. denied, 395 U.S. 958, 89 S.Ct. 2099, 23 L.Ed.2d 745 (1969) (arrest occurred when officer ordered suspect out of parked truck at gunpoint). We hold here that appellant was arrested when the. officers surrounded his automobile with drawn guns, ordered him to exit the vehicle, and required him to sit in the grass under guard at the rear of the vehicle.
Having determined that appellant was arrested, we must review the facts to determine if the officers had probable cause to make the arrest. Since we are dealing here with an arrest rather than a Terry stop, it is unnecessary to determine whether the officers had sufficient information to justify an investigative detention under Terry, and we choose not to do so. Compare White v. State, 550 So.2d 1074 (Ala.Cr.App.1989). An arrest not supported by probable cause is violative of the Fourth and Fourteenth Amendments. Dunaway v. New York.
“An officer has probable cause to make an arrest when, at the time the arrest is made, the facts and circumstances within his knowledge, and of which he has reasonably trustworthy information, are sufficient to lead a prudent person to believe that the suspect is committing or has committed an offense.”
Gord v. State, 475 So.2d 900, 902-03 (Ala. Cr.App.1985).
The probable cause necessary to justify a warrantless arrest usually arises from police observations and' reliable hearsay. “The arresting officer does not have to have personal knowledge of all the facts constituting probable cause; it can arrest upon the collective knowledge of the police when there is communication between them.” United States v. De Los Santos, 810 F.2d 1326, 1336 (5th Cir.1987), cert. denied, 484 U.S. 978, 108 S.Ct. 490, 98 L.Ed.2d 488 (1987). In the instant case, the officers possessed the information supplied by an anonymous informant, as well as the observations they made just prior to the arrest. Hearsay information from an informant may provide the basis for a finding of probable cause. State v. Calhoun, 502 So.2d 795 (Ala.Cr.App.), aff’d as to instant issue, 502 So.2d 808 (Ala.1986). The question to be decided is whether an officer of reasonable caution, possessing this information, would have believed that appellant had committed or was commit *165 ting an offense, in this case, the offense of carrying contraband.
Since probable cause, here, if it exists, must be based on an informant’s tip, Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), provides the applicable standard of review. In Gates, the Court abandoned the two-pronged test of Aguilar-Spinelli, veracity and basis of knowledge, in favor of a “totality of the circumstances” test, and characterized the veracity and basis of knowledge factors as. “relevant considerations” rather than two elements with independent status. Pursuant to Gates, we must examine the “totality of the circumstances” to determine whether the informant’s tip, coupled with the observations of the officers, provided probable cause to arrest appellant. This examination involves “a practical commonsense decision whether given all the circumstances ... including the ‘veracity’ and ‘basis of knowledge’ of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.” Id. at 238, 103 S.Ct. at 2332. Gates apparently holds that corroboration of details, even innocent details, can be enough to show probable cause under the totality of the circumstances, even though neither the informant’s veracity nor basis of knowledge has been established. Stanfield v. State, 529 So.2d 1053 (Ala.Cr.App.), cert. denied, 529 So.2d 1053 (1988); Calhoun v. State; W. LaFave, Search and Seizure § 3.3(f) (2d ed. 1987). The Court held in Gates, 462 U.S. at 245, 103 S.Ct. at 2335, the following:
“[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to sub silen-tio impose a drastically more rigorous definition of probable cause than the security of our citizens’ demands.... In making a determination of probable cause the relevant inquiry is not whether particular conduct is ‘innocent’ or ‘guilty,’ but the degree of suspicion that attaches to particular types of noncriminal acts.” (Citation omitted.)
The only information of criminality which the officer possessed at the time of the arrest came from the anonymous informant’s tip. The informant’s information contained no facts showing a basis of knowledge for the tip, or facts upon which the credibility of the informant could be established. Thus, information which would be “highly relevant” in determining the existence of probable cause was lacking. Id., 462 U.S. at 230, 103 S.Ct. at 2328. Moreover, the anonymous tip would not have met the Aquilar-Spinelli test. Clearly, the information from the informant, standing alone, did not supply probable cause. The innocent facts supplied by the informant could have been available to anyone, and the facts, innocent and otherwise, were insufficient to conclude that the informant had access to accurate and reliable information about illegal activity. Furthermore, no corroboration of the information was undertaken before the order to be on the lookout for appellant was transmitted over the radio. When Trooper Paustian first observed an automobile with California license plates matching the description given him, no attempt was made to verify the identity of the occupants. None of the actions of appellant or the appearance of the automobile and its occupants observed by the officers prior to the arrest was incriminating. No suspicion could have been attached to what the officers observed prior to the arrest. The observations made by the police just prior to the arrest did corroborate some of the information furnished by the informant, i.e., the description of the automobile, the California license plates, the time element, and that the automobile would be traveling east toward Florida. In our opinion, these observations of innocent details, which were very general in nature, were insufficient to elevate the facts received from the informant to a level which would support a finding of probable cause.
After examining all the circumstances in light of the legal principles discussed *166 above, we hold that the officers did not have probable cause to arrest appellant. The information available to the officers at the time of the arrest, in our opinion, was insufficient to cause a man of reasonable caution to believe that the automobile contained contraband.
Because the police did not have probable cause to arrest appellant, the initial seizure was illegal, and all evidence seized in the automobile was due to be suppressed. Likewise, for the same reasons, the incriminating statement made by appellant was due to be suppressed. The erroneous ruling of the trial court on the motion to suppress requires that we reverse and render judgment for the defendant in this case.
REVERSED AND JUDGMENT RENDERED.
All Judges concur.