**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Mark Shull JONES, Defendant–
Appellant.**

**No. 90–10501.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 17, 1992.

Decided Dec. 24, 1992.

As Amended April 6, 1993.

Bernard L. Segal, San Francisco, CA, for defendant-appellant.

Robert K. Crowe, Asst. U.S. Atty., San Jose, CA, for plaintiff-appellee.

Before FLETCHER, POOLE and BRUNETTI, Circuit Judges.

POOLE, Circuit Judge:

## I.

In the wee hours of the morning on August 26, 1988, sheriff's deputies of the Santa Cruz County Sheriff's Department interrupted dozens of men in the process of bringing some 10,000 kilograms of Thai marijuana ashore. Among the drugs and equipment seized was a pickup truck belonging to appellant Mark Shull Jones. Several of the individuals involved in the operation, during questioning by the authorities, implicated Jones in a conspiracy to import the marijuana, and placed him at the scene of the crime. Jones was subsequently charged in a four-count indictment with Conspiracy to Import Marijuana in violation of 21 U.S.C. § 963, Aiding and Abetting the Importation of Marijuana in violation of 21 U.S.C. § 952 & 18 U.S.C. § 2, Conspiracy to Distribute and Possession with Intent to Distribute in violation of 21 U.S.C. § 846, and Aiding and Abetting the Possession of Marijuana with Intent to Distribute in violation of 21 U.S.C. § 841 & 18 U.S.C. § 2. Following a jury trial, in which he was found guilty on all counts, Jones was sentenced to 151 months in prison with a 5 year term of supervised release. He now appeals his conviction and sentence, alleging that the district court erred by admitting testimony implicating him in prior marijuana smuggling conspiracies, refusing to allow him to conduct recross examination, and denying his motion to have sentencing transferred to a judge familiar with the case. We reverse.

## II.

Appellant complains of testimony by witnesses Weisberg and Stansbury regarding his involvement in previous marijuana smuggling operations during 1985, 1986, and 1987. Jones argues that admission of this testimony was improper since it was not relevant to any disputed issues, and because it was unduly prejudicial.

Evidence of a defendant's prior act is admissible under Rule 404(b) if that "evidence is probative of a material issue in the case." *United States v. Ramirez–Jiminez*, 967 F.2d 1321, 1325 (9th Cir.1992). The government argues that the evidence was material to the issues of knowledge, the background and development of the conspiracy charged, and association and plan. Jones contends that since he entirely denied his participation in the crime, proof of these issues is irrelevant. Knowledge and intent are, however, elements of possession with intent to distribute marijuana. *See* 21 U.S.C. § 841(a). Intent is also an element of criminal conspiracy, and of aiding and abetting in the commission of a crime. *United States v. Litteral*, 910 F.2d 547, 550 (9th Cir.1990). The fact that Jones denied participation in the crime and chose not to contest the knowledge and intent elements did not relieve the government of its burden of proving these elements beyond a reasonable doubt and should not prevent the government from meeting this burden by an otherwise acceptable means. *See United States v. Hadley*, 918 F.2d 848, 852 (9th Cir.1990), *cert. dismissed,* — U.S. ——, 113 S.Ct. 486, 121 L.Ed.2d 324 (1992). The government was therefore permitted to introduce evidence of Jones' prior acts so long as the acts tended to make the existence of his knowledge or intent more probable than it would be without the evidence. *Ramirez–Jimenez*, 967 F.2d at 1325.

In addition, we observed in *United States v. Normandeau*, 800 F.2d 953, 956 (9th Cir.1986), that association and plan are essential elements of the charge of conspiracy. We have previously found evidence of prior acts relevant as tending to demonstrate the existence of a criminal association and plan. Such evidence may "explain the nature of the relationship" between co-conspirators while placing "their transaction in context for the jury," thereby

"show[ing] the background and development of the conspiracy." *United States v. McKoy*, 771 F.2d 1207, 1214 (9th Cir.1985); *see also United States v. Nadler*, 698 F.2d 995, 1000 (9th Cir.1983). We believe that the testimony of Weisberg and Stansbury served just such a proper purpose, and therefore find no error in the admission of the testimony.

■ Jones makes the related argument that, since he did not contest the elements for which the evidence was admitted, the evidence of his prior crimes had very little probative value. Thus, he concludes, the probative value was "necessarily" outweighed by the prejudicial effect. This argument is mistaken. The probative value of the evidence is to be measured by its tendency to make the existence of Jones' knowledge of and participation in the conspiracy more probable than it would be without the evidence, not by how vigorously he contests the elements the evidence is admitted to prove. *See* Fed.R.Evid. 401. Since we agree with the district court that the evidence was probative of material issues in the case, we find no abuse of discretion in the district court's conclusion that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice to the defendant. *United States v. Perkins*, 937 F.2d 1397, 1400 (9th Cir.1991).

### III.

■ Jones argues that the trial court imposed a blanket ban on recross examination in violation of his right of confrontation. Whether limitations on the scope of questioning at trial constitute a violation of the confrontation clause is a question of law that we review de novo. *United States v. Jenkins*, 884 F.2d 433, 435 (9th Cir.), *cert. denied*, 493 U.S. 1005, 110 S.Ct. 568, 107 L.Ed.2d 562 (1989). At the same time, the trial court is vested with discretion to limit questioning, and this court will find error only when that discretion has been abused. *Id.; United States v. Vargas*, 933 F.2d 701, 704 (9th Cir.1991).

■ A prior panel of this court rejected a similar claim raised by one of Jones' codefendants, Richard Vorpagel, finding that Vorpagel's attorney "d[id] not appear to have interpreted the judge's statement as a 'blanket' prohibition...." *United States v. Vorpagel*, No. 90–10378, slip op. at 2 (9th Cir. Sep. 24, 1991) [944 F.2d 910 (Table)]. The government argues that under the doctrine of law of the case, this panel is precluded from a redetermination of this issue. *See United States v. Schaff*, 948 F.2d 501, 506 (9th Cir.1991).

We are not necessarily bound, however, by the prior finding. In *United States v. Maybusher*, 735 F.2d 366, 370 (9th Cir. 1984), *cert. denied*, 469 U.S. 1110, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985), we observed that the doctrine of law of the case "expresses only the practice of courts generally to refuse to reopen questions formerly decided, and is not a limitation of their power." In any event, the *Vorpagel* decision rested on a finding that Vorpagel's attorney understood that recross examination would be permitted if new material was raised on redirect. The record does not support a finding that Jones' attorney shared this understanding or that the judge would have permitted any recross examination.

The government conducted redirect examination on ten witnesses; the defendants were not permitted to recross examine any of those witnesses. Following the very first redirect examination, Jones' attorney (Segal) attempted to conduct recross examination, and the following exchange ensued:

[ASSISTANT UNITED STATES ATTORNEY] CROWE: Nothing further.

MR. SEGAL: Let's talk about that.

THE COURT: Go back and sit down. I don't allow recross.

MR. SEGAL: I ask Your Honor's leave to do it.

THE COURT: No. Sit down. You may step down. Call your next witness.

Later that day, Segal objected repeatedly to the redirect examination of a witness, and even moved for mistrial, but then

failed to ask for an opportunity to recross examine the witness. This indicates to us that Segal really believed that the court had imposed a blanket prohibition on recross. The following day, codefendant Vorpagel's attorney requested permission to conduct recross for the first time since the court had announced that it didn't allow recross. The court denied the request without explanation.

The prosecution asked the very next witness, Alex Vasilieff, to identify Jones for the first time on redirect examination. During the course of this questioning, Jones' attorney repeatedly objected that the redirect exceeded the scope of cross, finally pleading for an opportunity to conduct recross examination:

MR. SEGAL: Your Honor, this is objected to. It is improper redirect, beyond the scope of cross.

THE COURT: Overruled. Go ahead.

MR. SEGAL: Well, Your Honor, allow me to recross in this matter. It doesn't relate to cross in any manner.

THE COURT: No. Overruled. Go ahead.

Following this exchange, neither Jones' attorney nor any of the other attorneys involved in the case sought an opportunity to conduct recross for the next several days, even though some new information was being elicited during redirect, and objected to by Segal.

In fact, the only time that the district court ever indicated that the ban on recross examination was anything less than absolute came following the redirect examination of the government's last witness. Following that redirect examination, Jones' codefendant "ask[ed] the Court's indulgence for recross just for this witness." The court replied: "He didn't go into anything new. No, be denied."

■ Thus, Jones' claim that he understood the trial judge's ruling as an absolute ban on recross examination is supported by the record. Because new matters were brought out during redirect, such a blanket

prohibition violated Jones' right of confrontation. *See Vargas,* 933 F.2d at 708. In the recent case of *United States v. Riggi,* 951 F.2d 1368 (3rd Cir.1991), for example, the Third Circuit reversed the appellants' convictions as a result of the trial court's blanket denial of recross examination. That court observed:

In the case before us, by reason of the district court's policy forbidding recross-examination, new information elicited on redirect examination was not subjected to recross-examination by defense counsel. When material new matters are brought out on redirect examination, the Confrontation Clause ·of the Sixth Amendment mandates that the opposing party be given the right of recross-examination on those new matters.

*Id.* at 1375.

■ The violation of appellant's right to confrontation is subject to harmless error analysis, and we will uphold the conviction if the government carries its burden of persuading this court that the error was harmless beyond a reasonable doubt. *Vargas,* 933 F.2d at 709. We are not satisfied, however, that the error was harmless. In cases such as this, where the defendant was precluded from conducting recross examination, we must "ask whether we are convinced beyond a reasonable doubt" that the testimony elicited on redirect examination "did not contribute to any of the convictions." *Id.*

From our reading of the record, we believe that damaging testimony was elicited during redirect examination of Vasilieff. Vasilieff identified Jones as the individual he had walked with while leaving the beach following the arrival of the authorities at the site of the offloading operation. This testimony was material to placing Jones at the scene of the crime, and served to corroborate the harmful testimony of Stansbury and Weisberg. The district court's ban on recross examination prevented Jones from probing Vasilief's incriminating testimony. As a consequence, Jones was unable to subject the prosecution's case to " 'the rigorous adversarial testing that is the norm of Anglo–American criminal pro-

ceedings.' " *Id.* (quoting *Maryland v. Craig,* 497 U.S. 836, 846, 110 S.Ct. 3157, 3163, 111 L.Ed.2d 666 (1990)). We conclude that Vasilief's testimony during redirect examination almost certainly contributed to Jones' conviction, and accordingly we must reverse.

### IV.

Since we are reversing Jones' conviction, we need not reach his allegations of error in the imposition of sentence except briefly to discuss the issues raised for the guidance of all. Jones was sentenced by a visiting judge who had no prior connection to the case. Prior to sentencing, he moved to transfer the sentencing either to the judge, also a visiting judge, who had conducted the trial, or to the judge who had received the verdict from the jury. This motion was denied by the sentencing judge. On appeal, Jones argues that his sentence should be vacated and the case remanded for resentencing, contending that the sentencing judge was unfamiliar with the case and relied on inaccurate information in sentencing him. The government argues that the sentence is within the applicable guidelines range, and should therefore not be subject to review on appeal. This rule is limited, however, by a defendant's due process right to have his sentence based on accurate information. *United States v. Lai,* 944 F.2d 1434, 1440 (9th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 947, 117 L.Ed.2d 116 (1992). Jones' claim is therefore subject to appellate review.

 Since the sentencing judge did not preside over appellant's trial, we review the decision to impose sentence for an abuse of discretion. *United States v. Spinney,* 795 F.2d 1410, 1413 (9th Cir. 1986). In the past, we have looked to a variety of factors in determining whether a sentencing judge has abused her discretion in imposing sentence. Such factors include: (1) a review of the transcript from the sentencing hearing to determine whether the sentencing judge demonstrated familiarity with the case, *id.* at 1414; *United States v. Larios,* 640 F.2d 938, 943 (9th Cir.1981); (2) whether the sentence imposed demonstrated the use of informed discretion, *Spinney,* 795 F.2d at 1414; and (3) whether the judge had availed herself of available information such as trial transcripts and presentence reports, *Larios,* 640 F.2d at 942–943; *United States v. Rosales–Lopez,* 617 F.2d 1349, 1357 (9th Cir. 1980), *aff'd on other grounds,* 451 U.S. 182, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981). Finally, the degree of familiarity necessary will vary with the nature of the case: "the more the case depends on the credibility, and especially the demeanor, of the witnesses, the more a judge needs to do to become adequately familiar with it." *Larios,* 640 F.2d at 943.

The sentencing judge apparently had discussed Jones' case with the trial judge and indicated that in imposing the sentence, he was acquiescing in the trial judge's view of the case. While recognizing that the sentencing judge thus had at least a minimal acquaintance with the facts relevant to sentencing, and without addressing the possible due process implications implicit where one judge's view of what is the appropriate sentence is founded upon the conclusions of another, our review of the record indicates that the sentencing judge here was not sufficiently familiar with the case to allow him to fashion an appropriate and individualized sentence. In fact, there was some confusion about the case, and at one point the sentencer even mistook Jones for another defendant. Moreover, it is at least unclear from the record whether he had even reviewed the trial transcripts. In addition, Jones received the maximum sentence within the applicable guidelines range. These facts, combined with the apparent disparity between Jones' sentence and the sentences of other participants in the smuggling operation who were sentenced by other judges, lead us to conclude that the sentencing court may not have exercised that informed discretion which is so important in the imposition of sentence. Under such circumstances, we are reluctant to allow appellant's sentence to stand.

Appellant's conviction is REVERSED. The case is REMANDED for proceedings consistent with this opinion.