8 F.3d 31
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gerardo CAZARES-BARRAGAN, Defendant-Appellant.
 No. 92-10532.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 12, 1993.
Decided Oct. 4, 1993.
 
 1
 Before: REINHARDT, LEAVY, Circuit Judges, and MERHIGE*, Senior District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Gerardo Cazares-Barragan (Cazares) appeals his conviction and sentence for distribution of cocaine and heroin and conspiracy to distribute cocaine. See 28 U.S.C. §§ 841(a)(1) and 846.
 
 I. Sufficiency of the Evidence
 
 4
 Cazares contends the evidence was insufficient to support his conviction. However, Cazares is foreclosed from arguing this issue. As the Government points out, Cazares waived this argument by not only failing to move but in stating at trial that he would not move for judgment of acquittal to challenge the sufficiency of the evidence. See United States v. Smith, 924 F.2d 889, 893 (9th Cir.1991); United States v. Harden, 846 F.2d 1229, 1232 (9th Cir.), cert. denied, 488 U.S. 910 (1988).
 
 
 5
 Assuming that the issue was not foreclosed, we would nonetheless reject Cazares' argument. We review sufficiency of the evidence in the light most favorable to the government, asking whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 6
 Cazares argues the Government did not prove an element of the charged offense; namely, that he knowingly possessed the drugs. Cazares argues he was merely present during the events leading to the drug sale and that the testimony to the contrary of his codefendant, Rafael Espinoza (Espinoza), is "patently untruthful and self-serving." Espinoza's unreliability, Cazares argues, was shown at his second trial, where Espinoza admitted he lied during Cazares' first trial as to whether he had previously acted as an informant. In addition, Espinoza acknowledged "several significant inconsistencies" between his testimony in Cazares' first and second trials.
 
 
 7
 This circuit has stated that "mere proximity to [a] drug, presence on the property where it is located, or association with the person who controls the drug is insufficient to support a conviction for possession." United States v. Savinovich, 845 F.2d 834, 837 (9th Cir.), cert. denied, 488 U.S. 943 (1988). The evidence of Cazares' connection to the drugs from witnesses other than Espinoza is limited.[1] Nonetheless, Espinoza testified that he and Cazares were involved in a drug trafficking conspiracy. Espinoza admitted he lied during Cazares' first trial about his previous activities as an informant. However, during the second trial, this fact was brought out twice on cross-examination. Thus, the jury was aware of it.
 
 
 8
 While "[m]ere proximity to the drug" or "association with the person who controls the drug" is insufficient to support a conviction for possession, we have stated that "if there is a rational basis for attributing interest in the contraband to one party because of relationship with another, a trier of fact can infer sufficient knowledge to support a conviction for possession." Id. at 837. Given Espinoza's admitted guilt and his testimony that he and Cazares were involved in the drug trafficking business and that Cazares was his source of drugs, Cazares' conviction on both the conspiracy and possession charges is AFFIRMED.
 
 II. Sentencing
 A. Sentencing Judge
 
 9
 Cazares first contends his sentence must be vacated because the district judge who sentenced Cazares, Lloyd D. George, presided over Cazares' first trial, but not his second. However, absent an error in sentencing, there is nothing wrong with the fact that Judge George sentenced Cazares.
 
 B. U.S.S.G. § 3B1.1
 
 10
 Cazares also argues the district court erred in upwardly adjusting his sentence by two levels under U.S.S.G. § 3B1.1 because, among the three participants in the alleged conspiracy, himself, his brother, Joel Barragan, and Espinoza, his role was established at trial to be the most minor. The Government contends that, as Espinoza's source, Cazares deserved a two level increase under section 3B1.1.
 
 Section 3B1.1 provides in relevant part:
 
 11
 If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.
 
 
 12
 U.S.S.G. § 3B1.1(c) (1991). The Commentary to section 3B1.1 states that, in deciding whether an increase is warranted under this section, the court should consider
 
 
 13
 the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.
 
 
 14
 U.S.S.G. § 3B1.1, Application Note 3 (1991). The district court's conclusion that an individual was an "organizer, leader, manager, or supervisor" under section 3B1.1 is essentially a factual determination which this court reviews for clear error. United States v. Carvajal, 905 F.2d 1292, 1295 (9th Cir.1990).
 
 
 15
 The district court made a two point upward adjustment under section 3B1.1 "for the reasons articulated in the report and by Mr. Green [ (Green) the prosecutor]." RT at 12, lines 12-13. The presentence report recommended such an adjustment because "Government records suggest [Cazares] exercised some decision making authority and control over others involved in this conspiracy." Green argued:
 
 
 16
 [H]e's certainly not a supervisor of a great number of people. He's a supervisor or organizer or a manager only in the sense that he's the supplier from Southern California, he would be responsible for bringing the narcotics to Las Vegas. In every one of these transactions that Espinoza testified about defendant went along to make sure the transaction went okay and then waited until the money was available to take the money back for the payment for the cocaine.
 
 
 17
 In the final transaction, he took Espinoza to the location. He gave him the directions of where to go to pick up the cocaine and Espinoza went in the house and came out with a suitcase, then it was delivered.
 
 
 18
 So he's always the overseer or the supervisor in the sense that he supplied the cocaine, he was responsible for it and he was--he would definitely stick with every transaction until it was concluded, to obtain the money. And only in that sense was he the supervisor or organizer.
 
 
 19
 Id. at 10-11. The transcript of Cazares' sentencing hearing indicates the district court was also persuaded to make a two level adjustment under section 3B1.1 by testimony at trial that Cazares gave the signal to consummate the transaction.
 
 
 20
 There was testimony indicating that Cazares' brother, Joel, played a more major role in the offense than Cazares. However, the Commentary to section 3B1.1 specifically provides that "[t]here can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." U.S.S.G. § 3B1.1, Application Note 3 (1991). Given Espinoza's testimony that Cazares was the source of the drugs, and evidence that it was Cazares who gave the signal indicating that the transaction be consummated, we cannot say that the district court clearly erred in awarding a two point upward adjustment under section 3B1.1.
 
 
 21
 C. Objection to Accuracy of Presentence Report
 
 
 22
 Cazares argues this case must be remanded to the district court for resentencing because the district court did not properly consider his objection to the statement in his presentence report that he has a "persistent problem with narcotics trafficking." Presentence Report at 7, p 41. When the defendant challenges the accuracy of any matters contained in the presentence report, the district court must, at the time of sentencing, make the findings or determinations required by Fed.R.Crim.P. 32.[2] United States v. Fernandez-Angulo, 897 F.2d 1514, 1516 (9th Cir.1990) (en banc).
 
 
 23
 In his objections to the presentence report, Cazares wrote:
 
 
 24
 Defendant contests the Department's Sentencing Justifications contained in paragraph 41 and 43 of the Report. Specifically, there is no basis for the Department's conclusion that "[defendant] has a persistent problem with narcotics trafficking." This defendant has never been previously convicted of any offense, let alone a drug-related offense.
 
 
 25
 CR 93 at 2-3, p 4.
 
 
 26
 Paragraph 41 and 43 of the presentence report read:
 
 
 27
 When considering this offense, it is apparent that Mr. Cazares-Barragan has a persistent problem with narcotics trafficking. He acted as the supplier for the codefendants to provide narcotics to the undercover agents.
 
 
 28
 ....
 
 
 29
 Given the seriousness of the instant offense and overall circumstances with this individual, it appears that a sentence toward the upper end of the guideline range would be appropriate to meet sentencing goals of punishment and general deterrence. Also, a term of supervised release would help to monitor the defendant's return to the community. However, the defendant has an immigration detainer pending and there is the possibility of deportation.
 
 
 30
 Presentence Report at 7, pp 41, 43.
 
 
 31
 While contained in his written objections to the presentence report, Cazares' objection to the report's statement that he had a persistent problem with drug trafficking was not raised by counsel during Cazares' sentencing hearing. During that hearing, the district court stated:
 
 
 32
 I really don't believe in the innocence of the defendant and I believe he is involved in far more than he would like the Court to believe. And for the reasons articulated in the probation report, it appears as though the defendant has been involved with narcotics trafficking and it would appear to me from what I've heard and a review of the report that he has in fact been the supplier to others to provide narcotics, fortunately in this case to undercover agents.
 
 
 33
 He as well, I think it's conceded, is an illegal alien and he has been deported in the past for the same suspected behavior from the State of Oregon. And certainly, given the seriousness of the instant offense and the overall circumstances with this individual, it would appear to the Court that a substantial sentence should be provided for.
 
 RT at 17. (Emphasis added.)
 
 34
 While Cazares objected to the presentence report's conclusion that he had a persistent problem with drug trafficking, he did not object to the accuracy of the report's findings that he was involved in a prior drug trafficking incident and that he was the supplier of drugs in this trafficking operation. Paragraph 32 of Cazares' presentence report states that, in 1989, he was arrested for possession and delivery of heroin in Oregon. Presentence Report at 5, p 32. Paragraph 7 of Cazares' presentence report reads:
 
 
 35
 According to trial testimony, the defendant conspired with codefendant Rafael Espinoza (Caranza) approximately one year prior to August of 1991. In that time frame, Rafael Espinoza and defendant Cazares-Barragan distributed cocaine together in Las Vegas, Nevada on at least four occasions other than the count on August 20, 1991. The first occasion involved the distribution of 1 kilogram of cocaine. The second involved the distribution of 2 kilograms third, 5 kilograms of cocaine were distributed, and the fourth, 10 kilograms of cocaine were distributed. On the 10 kilogram incident occurred (sic) approximately one month prior to the August 20, 1991, the (sic) arrest date.
 
 
 36
 Id. at 2, p 7.
 
 
 37
 The district court specifically found that Cazares had been involved in prior drug trafficking operations and that he was the supplier of drugs in this trafficking operation. Given these findings, Cazares' failure to raise this issue before the district court during his sentencing hearing, and Cazares' failure to object to the accuracy of paragraphs 7 and 32 of his presentence report, we find the district court complied with Fed.R.Crim.P. 32.
 
 
 38
 AFFIRMED.
 
 REINHARDT, Circuit Judge, dissenting in part:
 
 39
 I concur in the affirmance of Cazares' conviction. However, I would vacate his sentence and remand for reconsideration in light of our recent decision in United States v. Delgado, No. 91-10288, slip op. at 9755 (September 8, 1993).
 
 
 40
 In Delgado, which was unavailable to the district court at the time of sentencing, we held that "selling to people does not make one an organizer of customers, even wholesale customers" for purposes of the continuing criminal enterprise (CCE) statute. Id. at 9766. I believe the reasoning of Delgado applies equally to guidelines adjustments as to CCE convictions. Here, the government's justification for an upward adjustment under USSG § 3B1.1(c) relies heavily upon Cazares' status as a supplier. The sentencing judge, who did not preside over the trial resulting in Cazares' conviction, adopted the government's rationale without further explanation and without reviewing the transcript of the trial. Cf. United States v. Jones, 982 F.2d 380, 385 (9th Cir.1992) (reluctance to allow sentence to stand where sentencing judge was not trial judge and it is unclear if sentencer reviewed trial transcript). In this context, I would vacate and remand with instructions to the district court to reconsider the upward adjustment in light of Delgado and to review the trial transcript before resentencing.
 
 
 
 *
 The Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 For example, one of the surveilling FBI Special Agents, John Wilson (Wilson), testified that, during his visit to Santa Ana, California, Espinoza met with Cazares. However, Wilson admitted that during the three-day surveillance, Cazares was not observed in possession of any cocaine, nor was Cazares recorded making statements regarding any drugs or drug deals
 
 
 [2]
 Rule 32 states:
 If the comments of the defendant and defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons.
 Fed.R.Crim.P. 32(c)(3)(D).