NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

JESUS ALONSO GOMEZ, *Appellant.*

No. 1 CA-CR 20-0188
FILED 5-27-2021

---

Appeal from the Superior Court in Maricopa County
No. CR2017-006288-002

The Honorable Suzanne E. Cohen, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Maricopa County Legal Advocate's Office, Phoenix
By Grace M. Guisewite
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge D. Steven Williams delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge James B. Morse Jr. joined.

_____

**W I L L I A M S**, Judge:

¶1         Jesus Alonso Gomez appeals his convictions and sentences for first-degree felony murder, first-degree burglary, conspiracy to commit first-degree burglary, and disorderly conduct. For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2         In May 2017, the victim, C.C., was arrested for assaulting his then-girlfriend, Tiffany Van Nest, and her infant son. Van Nest contacted her son's father, Clark Wylie, and informed him of the assault. Wylie resided in Texas at the time.

¶3         Van Nest traveled with her infant son from Arizona to Texas. Upon learning of C.C.'s release from custody, Van Nest met with Wylie to discuss confronting C.C. in Arizona. Van Nest posted on social media that C.C. was a "dead man walking."

¶4         After meeting with Van Nest, Wylie contacted Gomez, known as "Killa" over social media. Both men identified as members of the "Nutty Blocc Crips" gang. Wylie expressed his anger and asked Gomez to "ride" in a "mission on Crip" to "check" someone for assaulting his son. These terms typically refer to an act of violence committed at the request of another gang member.

¶5         Wylie, Van Nest, and Gomez traveled to C.C.'s apartment in Arizona. Gomez and Wylie attacked C.C. in the doorway of his apartment, hitting him repeatedly with baseball bats. C.C. attempted to defend himself with a golf club but Gomez and Wylie took the club and continued the attack.

¶6         C.C.'s 12-year-old brother emerged from a bedroom in the apartment and observed the men beating C.C. As Wylie and Gomez fled from the apartment, C.C.'s brother saw Van Nest waiting for the men in a nearby stairwell. C.C. died at the scene from blunt force trauma to the head.

¶7        Wylie, Van Nest, and Gomez returned to Texas. On the way, Gomez threw the baseball bats from the car window. All three were eventually arrested in Texas. Before Gomez's arrest, he boasted to a friend that he wanted a "teardrop" tattoo, typically symbolizing the commission of an assault or murder in furtherance of gang activity.

¶8        The State charged Gomez with first-degree premeditated and/or felony murder, a Class 1 felony (Count 1); first-degree burglary, a Class 2 felony (Count 2); conspiracy to commit first-degree burglary, a Class 2 felony (Count 3); and disorderly conduct, a Class 6 felony (Count 4).[1] Gomez, Wylie and Van Nest were charged as co-defendants.

¶9        The superior court granted an unopposed motion to sever Wylie's and Gomez's cases, and they were tried separately. Van Nest entered a testimonial plea agreement with the State and testified at both trials.

¶10       The jury found Gomez guilty of first-degree felony murder and guilty of the remaining charges. The jury also found the existence of aggravators. The superior court found Gomez had two historical prior felony convictions and sentenced him to concurrent terms of natural life with the possibility of release after 25 years for Count 1; 20 years' imprisonment for Count 2; and 20 years' imprisonment for Count 3. The court imposed a consecutive sentence of 5.75 years imprisonment for Count 4. Gomez timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

### A. Admission of Other-Act Evidence.

¶11       Gomez argues the superior court abused its discretion by admitting evidence of his gang affiliation and evidence of gang culture, as other-act evidence under Arizona Rule of Evidence 404(b). We review the court's admission of other-act evidence for an abuse of discretion, *State v. VanWinkle*, 230 Ariz. 387, 392, ¶ 18 (2012), noting that a court has broad discretion in determining the admissibility of evidence at trial. *State v. Gamez*, 227 Ariz. 445, 449, ¶ 25 (App. 2011).

---

[1]        Though initially charged only in Counts 2 through 5, Gomez stipulated to renumbering the counts for trial. We list the counts as renumbered.

¶12        Gomez's pre-trial notice of defenses included lack of criminal or specific intent. The State subsequently moved *in limine* to introduce other-act evidence of Gomez's gang affiliation, including evidence of gang culture, to demonstrate motive and intent. Gomez objected, arguing evidence of his gang affiliation would be highly prejudicial and lacked any nexus to the charged offenses. At an evidentiary hearing, a gang expert testified that Gomez and Wylie admitted their gang affiliation, used gang terminology in discussing their "mission" to confront C.C., and that Gomez used gang terminology when boasting of C.C.'s murder. The expert further testified that gang members must provide support for fellow members and commonly use violence to maintain respect.

¶13        The superior court granted the State's motion, but precluded any mention of gang activity not related to the charged offenses. In a detailed ruling, the court cited to the standard of admissibility under Rule 404(b), noted the significant probative value of the evidence, and precluded the State from expanding the admission of gang related evidence into irrelevant conduct. At trial, the State complied with the court's ruling and limited the other-act evidence to the relevant gang terminology and conduct and, in closing argument, argued Gomez's gang affiliation demonstrated his motive and intent for participating in C.C.'s murder. The court instructed the jury to consider Gomez's gang affiliation only as it related to his motive and intent to commit the charged acts.

¶14        Gomez argues that this was improper profile evidence. "Profile evidence tends to show that a defendant possesses one or more . . . characteristics . . . typically displayed by persons engaged in a particular kind of activity." *State v. Ketchner*, 236 Ariz. 262, 264, ¶ 15 (2014) (internal quotation marks and citations omitted). Because profile evidence "implicitly invit[es] the jury to infer criminal conduct based on described characteristics," it "may not be used as substantive proof of guilt." *Id.* at 264–65, ¶¶ 15, 17. However, such evidence may be admissible for other purposes, such as proof of motive or intent, Rule 404(b), provided it is "relevant under Rule 402, and that its probative value is not substantially outweighed by the potential for unfair prejudice under Rule 403," *State v. Mott*, 187 Ariz. 536, 545 (1997). Evidence of a defendant's gang affiliation, including customs of that gang, may be admissible to establish the defendant's motive or intent to commit the charged offense. *See State v. Johnson*, 212 Ariz. 425, 430, ¶ 12 (2006) (holding gang evidence was admissible to establish defendant's motive for killing a witness to a crime for which a younger, fellow gang member was being charged, where defendant had no connection to the victim but had a duty to protect the younger gang member); *State v. Jackson*, 186 Ariz. 20, 26 (1996) (holding

gang evidence admissible to show motive); *United States v. Santiago*, 46 F.3d 885, 889 (9th Cir. 1995) (explaining the admission of evidence relating to gangs and other organizations is proper when relevant to the issue of motive).

¶15        The superior court properly admitted the other-act evidence under Rule 404(b). Although not required, evidence of a defendant's motive is relevant in a murder prosecution. *See State v. Hunter*, 136 Ariz. 45, 50 (1983). With no evidence of a direct connection to C.C., Gomez's gang affiliation provided an explanation for his immediate willingness to participate in the events that led to C.C.'s murder. *See Johnson*, 212 Ariz. at 434 (approving of evidence of gang affiliation as "particularly probative on the issue of motive"). Wylie's and Gomez's communications related to the murder, were vital to the State's prosecution, and were replete with gang terminology and references to gang principles. Even if Wylie and Gomez were friends apart from the gang, as Gomez argues, that relationship was inextricable from their connection as fellow gang members. *See United States v. Jones*, 982 F.2d 380, 382–83 (9th Cir. 1992) (quoting *United States v. McKoy*, 771 F.2d 1207, 1214 (9th Cir. 1985)) (stating that evidence of a "criminal association" may "'explain the nature of the relationship' between co-conspirators while placing 'their transaction in context for the jury'"). The other-act evidence was highly probative in providing context for Gomez's perceived duty to Wylie's cause, willingness to commit extreme violence, and callousness in the wake of the murder.

¶16        Moreover, we are not persuaded by Gomez's assertion that the superior court failed to sufficiently limit the prejudicial impact of the evidence. Evidence is unfairly prejudicial if it "has an undue tendency to suggest decision on improper basis, such as emotion, sympathy or horror." *Mott*, 187 Ariz. at 545. Here, the court limited the State's use of the other-act evidence and restricted the jury's consideration of the evidence in its limiting instruction, all of which mitigated the potential for unfair prejudice. *See* Ariz. R. Evid. 105 (requiring that, upon request, a superior court must give a limiting instruction when evidence is admissible for one purpose but not another); *State v. Villalobos*, 225 Ariz. 74, 80, ¶ 20 (2010) (holding that any prejudice from the admission of other act evidence was "appropriately mitigated by the [limiting] instruction . . . which reminded the jury of the limited purposes for which it could consider the other acts evidence"). Although the evidence was unfavorable to Gomez's defense, nothing from the record indicates that the jury rendered its "decision on an improper basis, such as emotion, sympathy, or horror." *Mott*, 187 Ariz. at 545. Gomez has failed to show the court abused its discretion.

**B. Use of Aggravators.**

**¶17**    Gomez contends the superior court erred by considering prohibited aggravators in Counts 2 through 4. In particular, Gomez challenges the court's use of the deadly weapon aggravator in Counts 2 and 4, and the presence of a child aggravator in Counts 2 and 3.

**¶18**    Gomez argues this court must review the issue under an abuse of discretion standard, relying on *State v. Vermuele*, 226 Ariz. 399 (App. 2011). Unlike *Vermuele*, where the defendant had no "clear procedural opportunity" to object, Gomez had numerous opportunities to raise an objection before and during sentencing. *Id.* at 402, ¶ 9. The State alleged the aggravators before trial, the parties discussed the aggravators before presenting them to the jury, and the superior court noted the jury's findings before imposition of sentence. Because Gomez did not raise an objection, he forfeited appellate relief absent fundamental, prejudicial error. *See State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018).

**¶19**    The superior court commits fundamental error if it imposes an aggravated sentence based on prohibited factors. *State v. Trujillo*, 227 Ariz. 314, 317–18, ¶¶ 10, 15 (App. 2011). To prove the error caused prejudice, however, the defendant must show the court "could have reasonably imposed a lighter sentence" absent the prohibited factors. *Id.* at 318, ¶ 16. We will not remand for resentencing if the court sentenced the defendant within the statutory range and the prejudicial impact of the prohibited factors is merely speculative. *See State v. Munninger*, 213 Ariz. 393, 397, ¶¶ 12–14 (App. 2006).

**¶20**    The superior court may only impose an aggravated sentence within the category three repetitive offender range if the State proves at least two of the aggravators listed in A.R.S. § 13-701(D). *See* A.R.S. § 13-703(G), (K). If the State proves at least one of the enumerated aggravators in § 13-701(D)(1) through (26), the court may consider "[a]ny other factor that the state alleges is relevant to the defendant's character or background or to the nature or circumstances of the crime" under the "catch-all" provision in § 13-701(D)(27). *State v. Bonfiglio*, 231 Ariz. 371, 373, ¶¶ 8–9 (2013) (alteration in original) (quoting A.R.S. § 13-701(D)(27)). The court is not precluded from considering a circumstance under the "catch-all" provision simply because it shares similarities with an enumerated aggravator. *See State v. Romero*, 173 Ariz. 242, 243 (App. 1992) (statutory aggravating factor requiring commission of a felony within prior ten years did not preclude consideration of other felony under catch-all).

**¶21** As relevant here, the jury convicted Gomez of first-degree burglary in Count 2, conspiracy to commit first-degree burglary in Count 3, and disorderly conduct in Count 4. The State named C.C. as the victim in Counts 2 and 3, and his 12-year-old brother as the victim in Count 4. For Counts 2 and 3, the jury found a total of six aggravators, including (1) infliction of serious physical injury; (2) use of a deadly weapon or dangerous instrument; (3) presence of an accomplice; (4) harm to victims or their immediate family; (5) lying in wait or ambush; and (6) presence of a child. For Count 4, the jury found a total of four aggravators, including (1) infliction of serious physical injury; (2) use of a deadly weapon or dangerous instrument; (3) presence of an accomplice; and (4) harm to victims or their immediate family.

**¶22** At sentencing, the superior court listed each aggravator found by the jury, but noted that it specifically considered the severity of the offenses, "pain and suffering" of C.C.'s family, harm caused to the 12-year-old brother, and sentences imposed in Wylie's case.[2] The court found as mitigators Gomez's troubled childhood and issues with substance abuse, but concluded that that aggravators outweighed the mitigators. The court sentenced Gomez, a category three repetitive offender, to the slightly aggravated sentences of 20 years' imprisonment for Counts 2 and 3, and the aggravated sentence of 5.75 years' imprisonment for Count 4. *See* A.R.S. § 13-703(C), (J).

**¶23** Gomez does not challenge four of the aggravators used to impose sentences in Counts 2 and 3, nor does he challenge three of the aggravators used to impose sentence in Count 4. All are enumerated aggravators under § 13-701(D). *See* A.R.S. § 13-701(D)(1) (serious physical injury), (D)(4) (presence of an accomplice), (D)(9) (victim harm), (D)(17) (lying in wait or ambush). Thus, even excluding the challenged factors, the superior court lawfully imposed aggravated sentences in each count under A.R.S. §§ 13-701 and -703. *See State v. Martinez*, 210 Ariz. 578, 584–86 ¶¶ 21, 27 (2005). Nevertheless, we must still determine whether any prohibited factors impacted Gomez's sentences. *See Trujillo*, 227 Ariz. at 318, ¶ 15.

**¶24** As provided in § 13-701(D)(18), the superior court may consider, as an enumerated aggravator, where "the offense was committed

---

[2] The superior court imposed identical sentences to those imposed in Wylie's case. *See State v. Wylie*, 1 CA-CR 19-0207, 2020 WL 4719186, at *2, ¶ 10 (App. Aug. 13, 2020) (mem. decision). Gomez does not assert, nor do we address, any error in the court's use of the co-conspirator's sentences as a guide for imposing aggravated sentences.

in the presence of a child and any of the circumstances exists that are set forth in [the domestic violence statute] [A.R.S. § 13-3601(A)]." *See* A.R.S. §13-3601(A) (defining circumstances needed to constitute a domestic violence offense). The State does not argue on appeal, nor did it argue to the jury, that the circumstances listed in the domestic violence statute existed in this case. As discussed, *supra* ¶ 21, however, the court may consider any relevant circumstance of the crime under the "catch-all" provision if at least one enumerated aggravator applies. *See* A.R.S. § 13-701(D)(27); *Bonfiglio*, 231 Ariz. at 373, ¶¶ 8–9. Though the State failed to properly allege the challenged factor under § 13-701(D)(18), the court could consider the trauma suffered, when a young boy witnessed his brother's murder, as a relevant factor in imposing sentences in Counts 2 and 3. *See* A.R.S. § 13-701(D)(27). Thus, Gomez has failed to establish error, fundamental or otherwise.

¶25 Next, we consider the superior court's use of the deadly weapon aggravator in Counts 2 and 4. The State appears to concede error, but maintains any error was not prejudicial. We agree.

¶26 As provided in § 13-701(D)(2), the superior court may consider "use, threatened use or possession of a deadly weapon or dangerous instrument during the commission of the crime" as an enumerated aggravator, except where it is an essential element of the offense. In Counts 2 and 4, first-degree burglary and disorderly conduct, the use or possession of a deadly weapon or dangerous instrument is an essential element of the offense. *See* A.R.S. § 13-1508(A) (first-degree burglary); A.R.S. § 13-2904(A)(6) (disorderly conduct). As such, the court's use of a prohibited factor constituted error. Gomez, however, must still demonstrate the error caused him prejudice. *See Escalante*, 245 Ariz. at 142, ¶ 21.

¶27 Absent the prohibited factor, the jury found five proper aggravators for Count 2 and three proper aggravators for Count 4. The superior court placed significant weight on the harm caused to C.C.'s family and the harm caused to C.C.'s brother in witnessing the murder. *See* A.R.S. § 13-701(D)(9), (D)(27). Though the court listed all aggravators found by the jury before imposing sentence, a brief comment is not enough to demonstrate the prohibited factor played a role in the court's sentencing calculus. *See Trujillo*, 227 Ariz. at 319, ¶¶ 20–21 (finding prejudice where the superior court's statements regarding the prohibited factor "were not mere passing comments"). Nothing in the record suggests the court would have imposed lesser sentences had the jury not found the prohibited factor, and

simply speculating as to whether a factor impacted the sentence is not enough to establish prejudice. *See Munninger*, 213 Ariz. at 397, ¶ 14.

**¶28** Gomez has failed to establish any error resulted in prejudice. He is not entitled to resentencing.

## CONCLUSION

**¶29** For the foregoing reasons, we affirm Gomez's conviction and sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA