■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSE REYES, Appellant. [605 NYS2d 262] —Judgment, Supreme Court, New York County (Murray Mogel, J.), rendered May 21, 1992, convicting defendant, upon his plea of guilty, of criminal possession of a controlled substance in the second degree, and sentencing him to a term of three years to life, affirmed.

Evidence credited at defendant's suppression hearing was that two officers in a marked police van observed defendant walking briskly away from a group of men standing together in a drug-prone location, while clutching underneath his arm

in a suspicious manner as though "tucking" a weapon beneath his jacket, and then putting both hands in his pants pockets and walking "tightly" down the street. The officers followed him in their van but, becoming stuck in traffic, exited the van and walked after defendant. One officer, a few feet behind defendant, called to defendant, saying "Hey, stop, excuse me," "Stop, hey, stop, police", or words of that nature. The other officer was also close to defendant, close enough to have obstructed defendant's flight if defendant had chosen to flee, but defendant was not shown to have been aware of the proximity of that other officer. The motion court found the testimony of the first officer credible and found that the action he took was a minimal intrusion under *People v De Bour* (40 NY2d 210). We agree. Defendant simply complied with the request to stop and, while turning toward the officer, dropped a kilogram brick of cocaine from under his jacket. The officers then arrested him. The incident was clearly a "nonthreatening encounter in which an individual is approached for an articulable reason" *(People v Hollman,* 79 NY2d 181, 191). In *Hollman* the defendant was questioned by an officer in a bus. The officer was kneeling on the seat in front of defendant or standing in front of that seat; a second officer was located behind the first. The closeness of the officers did not preclude the finding that the questions were a first level request for information justified by an objective credible reason.

The situation in the instant case is analogous to that in *People v Diaz* (80 NY2d 950) in which two police plainclothed officers observed Diaz holding a dark, opaque plastic bag against his body in an area described by one officer as "drug-prone". When one of the officers stepped out of the police car and approached Diaz with his shield hanging visibly on his chest and his hand held over his gun, noticeable at his waist, Diaz threw the bag at him and fled before the officer could speak. The bag contained a kilogram brick of cocaine. "These circumstances", the Court of Appeals said, "although not necessarily indicative of criminality, justified the officers' initial approach for the purposes of asking defendant to identify himself and state his purpose in the neighborhood *(see, People v De Bour,* 40 NY2d 210). That one officer held his hand on his holstered gun as he approached defendant was not, by itself, sufficient to raise the encounter to a second-level investigatory stop under *De Bour" (supra,* at 952). The action of defendant Reyes in the instant case in clutching under his arm in such a location was more inducing of inquiry than Diaz's clutching of the bag—and more indicative of danger; and the policeman's

action in approaching Diaz and displaying his shield—on which Diaz's "eyes focused" *(supra,* at 951)—is hardly less intrusive than the officer's requesting defendant Reyes to stop in the instant case. In the instant case the officers also approached with their hands on their undrawn guns. The motion court expressly discredited Reyes' testimony that the police approached with guns drawn and that he was grabbed and searched.

As even the dissent concedes, the officers had the right to request information of defendant. Before they could ask any questions, however, and as he turned, a kilogram of cocaine dropped from under defendant's jacket. But the officers' conduct did not constitute a seizure. To hold otherwise would defeat the right of the police to make a request for information. A request that somebody stop is a necessary preliminary to a request for information when a person is ahead of the officer, walking away from him, and—for all that appears—unaware that the officer wished to inquire of him. The language of the police officer here, "Hey, stop, excuse me," "Stop, hey, stop, police," or words of that nature, seems to indicate "a general, nonthreatening encounter" and one at the minimal level of intrusiveness *(People v Hollman, supra,* at 191).

The dissent relies on *People v Holmes* (81 NY2d 1056). That case, however, involved flight by the defendant and pursuit by the police. Police pursuit is regarded as significantly impeding a person's freedom of movement, thus requiring justification by reasonable suspicion that a crime has been, is being, or is about to be committed *(supra,* at 1057-1058). Here there was no flight, no pursuit, no impediment to defendant's freedom of movement; there was only an approach by the police to inquire. It is anomalous that a person can better his chances of avoiding the consequences of illegal conduct if he refuses to comply with a police request for information and instead, by fleeing, induces the police to pursue him, even when the pursuit is successful. The desire to see the more compliant defendant at less of a disadvantage is understandable. It would not be a profitable resolution of the anomaly, however, to extend the advantages of flight to an accused where, as here, there has been no attempt to flee. Recent decisions involving flight indicate continued concern in connection with the legal effect of flight and pursuit *(see, People v Matienzo,* 81 NY2d 778; *People v Madera,* 189 AD2d 462, *affd* 82 NY2d 775; *see also, People v Holmes, supra,* at 1059 [Bellacosa, J., dissenting]). There is no authority, however, justifying the extension

of the advantages of flight to an accused who has not attempted to flee.

Like the dissent we too can agree with Justice Brandeis in his dissent in *Olmstead v United States* (277 US 438, 478) that "the right to be let alone" is a highly valued right, and that "[t]o protect that right, every *unjustifiable* intrusion * * * must be deemed a violation of the Fourth Amendment" (emphasis added). Our examination here is not to minimize that right but to decide whether the intrusion here was indeed unjustifiable. *De Bour* and *Hollman* are guides to aid in such decision; the criteria therein cannot be bypassed by citing "the right to be let alone" as an absolute. Concur—Sullivan, J. P., Kassal and Nardelli, JJ.

Carro and Ellerin, JJ., dissent in a memorandum by Carro, J., as follows: Shortly after noon on November 15, 1991 two uniformed police officers driving in a marked police van observed a group of men standing together around 185th Street and Wadsworth Avenue in Manhattan, a "drug-prone" area. According to the testimony of Officer Adrian Klapper at the suppression hearing, as the van turned onto the street where the men were standing, the defendant clutched inside his jacket beneath his armpit in a "suspicious" manner and walked briskly away from the group with both hands in his pockets. The officers followed defendant in their van for about a block, and after getting stuck in traffic, decided to proceed on foot. The officers approached the defendant with their hands on their holstered guns, positioned themselves on both sides of the defendant so he could not escape, and Officer Klapper commanded "stop, police." As the defendant stopped and turned toward Officer Klapper a brick of cocaine fell to the ground from beneath the armpit inside the defendant's jacket, and he was arrested. A search revealed another brick of cocaine hidden inside his jacket under his other armpit. The hearing court denied suppression, the defendant pleaded guilty, and he was sentenced to a term of from three years to life.

On appeal the defendant argues that he was constructively seized without sufficient predicate in violation of his Fourth Amendment rights or, alternatively, that the police action, even if viewed as less than a constructive seizure, was excessive under New York's common-law governing framework for the evaluation of police-civilian street encounters. Applying either analysis, I agree.

In *People v Hollman* (79 NY2d 181, 184-185), the Court of

Appeals reiterated the four-tiered method for evaluating the propriety under State law of citizen encounters initiated by police officers in their criminal law enforcement capacity, first set forth in *People v De Bour* (40 NY2d 210): "If a police officer seeks simply to request information from an individual, that request must be supported by an objective, credible reason, not necessarily indicative of criminality. The common-law right of inquiry, a wholly separate level of contact, is 'activated by a founded suspicion that criminal activity is afoot and permits a somewhat greater intrusion' *(People v De Bour, supra,* at 223). Where a police officer has reasonable suspicion that a particular person was involved in a felony or misdemeanor, the officer is authorized to forcibly stop and detain that person. Finally, where the officer has probable cause to believe that a person has committed a crime, an arrest is authorized."

The People do not argue that the factual predicate here permitted any police intrusion on defendant's right of privacy beyond a request for information, i.e. a first-tier encounter under *De Bour.* That position is in accord with the recent Court of Appeals decision in *People v Holmes* (81 NY2d 1056) which involved an approach by police officers predicated upon observations very similar to those in the case at bar. In *Holmes,* officers in their patrol car observed a group of men talking on the street near a known narcotics location. One of the officers noticed a bulge in the defendant's jacket pocket and, as the patrol car approached, the defendant left the group and walked away. As one officer exited the patrol car, the defendant ran and the officers pursued. The Court found that while the observations of the officers may have given rise to a first-tier request for information, there was insufficient justification for the greater level of intrusion represented by pursuit because the officers' observations did not give rise to "reasonable suspicion that a crime has been, is being, or is about to be committed *(People v Martinez,* 80 NY2d 444, 447)." *(People v Holmes,* 81 NY2d, *supra,* at 1058.)

The predicate here was plainly no greater than that in *Holmes.* The "[d]efendant was merely observed in the daytime, talking with a group of men on a New York City street. Given the unfortunate reality of crime in today's society, many areas of New York City, at one time or another, have probably been described by the police as 'high crime neighborhoods' or 'narcotics-prone locations' " *(People v Holmes, supra,* at 1058). The defendant's "clutching" inside his jacket in the armpit area, which could have been the adjustment of a breast-pocket

wallet or merely the scratch of an itch, was no more indicative of criminality than the pocket bulge observed in *Holmes.* Thus, the police were only authorized to request information, the first tier of the *De Bour* standards.

In *People v Howard* (50 NY2d 583, *cert denied* 449 US 1023) the Court of Appeals held that the right to inquire does not permit the police to pursue or stop a person if the person chooses to walk or run away *(see, People v Martinez,* 80 NY2d, *supra,* at 447). As pertinent to the issue presented by the factual circumstances in the instant case, the three dissenting Judges who would have denied the motion to suppress in *Howard* emphasized in support of their position: "No guns were drawn, no coercive language was employed, and no binding orders were transmitted." (50 NY2d, *supra,* at 595 [Jasen, J., dissenting].) Here, as previously noted, the police officers positioned themselves to block defendant's progress and, with hands on their holstered guns, the command was given "stop, police." In language particularly applicable to the facts and issue now before us, the Court of Appeals stated in *People v Holmes* (81 NY2d, *supra,* at 1058): "If these circumstances could combine with flight to justify pursuit, then in essence the right to inquire would be tantamount to the right to seize, and there would, in fact, be no right 'to be let alone.' That is not, nor should it be, the law."

I believe that the defendant was not only unlawfully stopped under the State common-law precedents cited above, but that he was unlawfully seized within the meaning of the Fourth Amendment. The Court of Appeals summarized the analysis pertinent to this issue in *People v Cantor* (36 NY2d 106, 111-112): "Whenever an individual is physically or constructively detained by virtue of a significant interruption of his liberty of movement as a result of police action, that individual has been seized within the meaning of the Fourth Amendment *(Terry* v. *Ohio* [392 US 1], *supra).* This is true whether a person submits to the authority of the badge or whether he succumbs to force. Here the defendant was deprived of his freedom of movement when he was encircled by three police officers as he stood alongside his car which was blocked by the police vehicle. At that moment he could not have proceeded on his way, therefore he was seized. (See, e.g., *United States* v. *Nicholas,* 448 F.2d 622; *United States* v. *Strickler,* 490 F.2d 378.)"

More recently, the United States Supreme Court reiterated that the test for determining whether police conduct amounts to a seizure is whether that conduct would have "communi-

cated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *(Michigan v Chesternut,* 486 US 567, 569.) The Supreme Court thereafter clarified that for Fourth Amendment purposes a seizure or an arrest "requires *either* physical force * * * *or,* where that is absent, *submission* to the assertion of authority" *(California v Hodari D.,* 499 US 621, 626 [emphasis in original]).

When the officers approached the defendant in this case with their hands on their guns, positioned themselves so he could not escape and commanded "stop, police," that surely would have communicated to any reasonable person that he was *not* at liberty to ignore the police presence and go about his business. The majority's observation that "defendant was not shown to have been aware of the proximity of that other officer" is irrelevant to our analysis because "the test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." *(California v Hodari D.,* 499 US, *supra,* at 628.)

I cannot agree with the majority's assertion that "[t]here is no authority * * * justifying the extension of the advantages of flight to an accused who has not attempted to flee." In fact, that is implicit in the holding of *California v Hodari D.* *(supra)* wherein the Court denied suppression of cocaine contraband because it was discarded by the defendant as the police were pursuing him *and* he was still running away, i.e. he had not submitted to a " 'show of authority.' " The Supreme Court stated (499 US, *supra,* at 629): "In sum, assuming that [Officer] Pertoso's pursuit in the present case constituted a 'show of authority' enjoining Hodari to halt, since Hodari did not comply with that injunction he was not seized until he was tackled. The cocaine abandoned while he was running was in this case not the fruit of a seizure, and his motion to exclude evidence of it was properly denied." The Supreme Court noted in that case that "even as a policy matter * * * compliance with police orders to stop should * * * be encouraged" and that compliance "almost invariably is the responsible course" *(supra,* at 627).

The majority's focus on whether the defendant attempted to "flee" misconstrues the fundamental right that is sought to be vindicated herein, which is "the right to be let alone—the most comprehensive of rights and the right most valued by civilized men" *(Olmstead v United States,* 277 US 438, 478

[Brandeis, J., dissenting]; *see also, People v May,* 81 NY2d 725, 728). *People v Howard* (50 NY2d, *supra,* at 586) establishes that this right encompasses the right of any person to "walk or run away" from a police approach or informational inquiry. The defendant was walking briskly away from the police (for obvious reasons) when he was unlawfully constructively seized by the order to stop which, viewed together with his being surrounded by officers with hands on their weapons, clearly constituted a show of police authority.

Reasonable suspicion that defendant had committed, was committing or was about to commit a crime, which was not present based on the officers' observations herein, is "essential to justify an encounter 'involving actual or constructive restraint' *(People v De Bour,* 40 NY2d 210, 216, *supra)." (People v Carrasquillo,* 54 NY2d 248, 252.) Since the initial stop and seizure of the defendant was unlawful, the fruits of that stop and seizure must be suppressed. Consequently, the defendant's conviction should be reversed and the indictment dismissed.