[667 NYS2d 705]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v LAVONNE THORNTON, Respondent.

First Department, January 8, 1998

APPEARANCES OF COUNSEL

*Anthony M. Capozzolo* of counsel, New York City *(Donald J. Siewert* on the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), for appellant.

*Robert N. Lerner,* Brooklyn, for respondent.

### OPINION OF THE COURT

ROSENBERGER, J. P.

At about 10:10 P.M., on October 13, 1995, Officer David Moser, Sergeant Glenn Hallahan, and Officer Thomas Faylin, all in plain clothes, were patrolling in an unmarked car driven by Sergeant Hallahan. Officers Moser and Faylin had their shields suspended visibly around their necks. The officers observed two young men on bicycles circling the intersection of Fifth Avenue and 116th Street. The officers had not received any report of a crime in progress in that area, nor did they know the bicyclists. They pulled alongside the young men. Moser called out, "Hey, fellows, what's up, how are we doing?" Neither man responded, and the defendant, upon this approach, turned his bicycle and quickly rode off in a different direction.

The officers then made a U-turn across 116th Street and began following the defendant. They dropped off Officer Faylin between Madison and Fifth Avenues. After the police car passed the defendant, he quickly stopped and jumped off his bicycle. Officer Moser looked back and saw the defendant remove a gun from his waistband and hurl it over a fence into a wooded lot. The defendant was then placed under arrest. When Officer Moser recovered the gun, he remarked to Sergeant Hallahan that it was unloaded. From the back seat of the car, the defendant observed, "Yeah, I know the gun's unloaded." The defendant had not yet been read his *Miranda* rights.

At the suppression hearing, the court found that Officer Moser's "Hey, fellows" query amounted to a Level I *De Bour* inquiry *(see, People v De Bour,* 40 NY2d 210, 223), and that since the officers had no "objective credible reason" to question the

men, as required by *De Bour*, the defendant was well within his rights not to respond to the inquiry and to pedal away. The court then found that, this being the case, the officers had no basis for pursuing him. The motion court suppressed the gun and the statement, on the grounds that both the discarding of the gun and the making of the statement directly resulted from the illegal police pursuit. The court then dismissed the indictment. The People now appeal.

In *People v De Bour (supra)*, the Court of Appeals recognized four escalating levels of police intrusion and set forth the types of circumstances that would justify each level of intrusion. A Level I intrusion, "[t]he minimal intrusion of approaching to request information", requires "some objective credible reason for that interference not necessarily indicative of criminality" (*supra*, at 223).* The defendant contended, and the motion court agreed, that Officer Moser's query "Hey, fellows, what's up, how are we doing?" was a Level I inquiry. We disagree.

Drawing the attention of the police may have made the defendant and his companion feel coerced or interrogated, regardless of the words used. What the defendant felt, standing alone, cannot mandate suppression.

A rule that turned facially innocuous words into a Level I inquiry based on the defendant's subjective reaction would be unworkable. It would unfairly stifle officers who act courteously and politely in good faith. It would operate to create a greater estrangement between the police and citizenry, where greater closeness and understanding instead are required. We could hardly say that the police cannot greet young men who are outside at night in a high-crime area that is also a minority neighborhood. In practical terms, such a rule would ill serve law-abiding residents of high-crime neighborhoods, who can feel reassured and protected by an officer's friendly greeting. Further, equal protection forbids a judicial rule that allows people of a certain ethnicity, or residents of a particular neighborhood, to presume that a greeting is a threat, while people with other demographic traits must take the officers' statements at face value.

We note that language alone is not now and has never been a safe harbor. A sham greeting that is clearly an inquiry is still subject to *De Bour* Level I analysis. The officers' bad faith was simply not shown in the instant case.

---

* Levels II, III, and IV are, respectively, right to inquire, stop and frisk, and arrest.

"Police pursuit is regarded as significantly impeding a person's freedom of movement, thus requiring justification by reasonable suspicion that a crime has been, is being, or is about to be committed" (*People v Reyes*, 199 AD2d 153, 155, *affd* 83 NY2d 945). By contrast, mere surveillance need not be justified by reasonable suspicion. The police may "continue observation provided that they do so unobtrusively and do not limit defendant's freedom of movement by so doing" (*People v Howard*, 50 NY2d 583, 592, *cert denied* 449 US 1023).

Here, the officers' subsequent actions are more properly characterized as observation than as pursuit. The police car followed the defendant for half a block, without accelerating or turning on its turret lights, and then passed him. The officers did not order him to stop, nor did they say anything else to him. After that, Officer Moser continued to watch the defendant through the rear window. The defendant discarded the gun once the car had passed him.

In *Matter of Jaime G.* (208 AD2d 382), the police car made a U-turn to approach the appellant in a " 'non-threatening' " manner, without turning on the sirens or the flashing lights. Upon seeing the car, he ran around the corner and discarded a gun. We rejected the appellant's contention that this amounted to a pursuit (*see also, People v Easton*, 182 AD2d 456, 457-458; *People v Harris*, 186 AD2d 390, *lv denied* 80 NY2d 1027).

In *Matter of Jaime G. (supra)*, we further held that even if the approach had been an unlawful pursuit, the discarding of the gun was not a spontaneous reaction that directly resulted from an illegal police intrusion, but rather an independent decision to hide the evidence (*see, People v Boodle*, 47 NY2d 398, 404, *cert denied* 444 US 969 ["Rather than a spontaneous reaction to a sudden and unexpected confrontation with the police, the defendant's attempt to discard the revolver was an independent act involving a calculated risk"]).

The instant case more closely resembles *Matter of Jaime G. (supra)* than it resembles cases in which suspects have frantically discarded evidence during a hot pursuit (*compare, People v Grant*, 164 AD2d 170, 175, *appeal dismissed* 77 NY2d 926 [coercive pressure of illegal chase negated defendant's ability to make thoughtful strategic decision as to disposal of evidence]). Here, the defendant had sufficient time and freedom of movement to make a "conscious calculated choice to drop the gun, based upon reflective thought" (*supra*, at 175). Thus, even if we agreed with the hearing court that Officer Moser's greeting was an unjustified Level I inquiry followed by an illegal

pursuit, we would deny the defendant's motion to suppress the gun.

Once having recovered the gun, the police had probable cause to arrest the defendant. The defendant's remark that he knew the gun was unloaded was a spontaneous statement, not made in response to any question by the officers, and was therefore admissible despite the fact that *Miranda* warnings had not yet been given (*People v Strange*, 194 AD2d 474, *lv denied* 82 NY2d 727).

Accordingly, the orders, Supreme Court, New York County (Arlene Silverman, J.), entered February 15, 1996 and September 24, 1996, which, respectively, granted defendant's motion to suppress a gun and a statement, and dismissed the indictment, should be reversed, on the law and the facts, the motion denied, the indictment reinstated, and the matter remanded for further proceedings.

NARDELLI, WALLACH, WILLIAMS and COLABELLA, JJ., concur.

Orders, Supreme Court, New York County, entered February 15, 1996 and September 24, 1996, reversed, on the law and the facts, the motion to suppress a gun and a statement denied, the indictment reinstated, and the matter remanded for further proceedings.